**James SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 53986.

Court of Criminal Appeals of Texas, Panel No. 2.

March 29, 1978.

Rehearing Denied May 9, 1979.

Charles L. Rittenberry, Amarillo, for appellant.

Randall Sherrod, Dist. Atty., Richard L. Wilcox, Asst. Dist. Atty., Canyon, for the State.

Before ONION, P. J., and DOUGLAS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated assault. Punishment was assessed by a jury at two years. The sufficiency of the evidence is not challenged.

In two grounds of error appellant argues that discussion of the parole law during jury deliberations constituted the receipt of other evidence by the jury after it had retired to deliberate, entitling him to a new trial under Article 40.03(7), V.A.C.C.P., and that such discussion constituted jury misconduct depriving him of a fair and impartial trial under Article 40.03(8), V.A.C.C.P. He relies on *Heredia v. State,* Tex.Cr.App., 528 S.W.2d 847, and *Sweed v. State,* Tex.Cr. App., 538 S.W.2d 119.

The State in reply contends the discussion of the parole law was not sufficient to deprive appellant of a fair and impartial trial, and, alternatively, that appellant was not harmed in that the effect of the discussion was to reduce the punishment assessed by the jury.

At the hearing on appellant's motion for new trial eight of the jurors appeared and were sworn as witnesses. Appellant called to the stand the two jurors who had made affidavits in support of his motion for new trial. The State presented no witnesses on the issue, and none of the other jurors were called to testify.

Juror Rigdon testified that during deliberations at the punishment stage of appel-

lant's trial one of the jurors, known as the Colonel, stated he had served on court martials and was familiar with the parole system. He told the jury that if appellant were given a two year sentence, he would not have to serve more than eight months. Rigdon testified she felt two years was too long a sentence and she was thinking of probation, but the Colonel's statement on the parole laws caused her to change her position. She further testified that the Colonel "said he had been on a lot of court-martials and he knew a lot about the penitentiary system. . . . That he [appellant] would not have to serve more than eight months if he behaved himself, is the way he put it." She stated she would not have voted for two years in the penitentiary if she had not been told these statements about the parole system. On cross-examination Rigdon testified her first vote was for eight years probation.

Juror Campbell was the other witness at the hearing on the motion for new trial. She testified that there was a great deal of discussion of the parole law and that a juror called Colonel and several other men on the jury "said that normally if we sentenced him to two years he would serve between six and eight months and be eligible for parole." Prior to the discussion she voted for probation, and after the discussion she voted for the penitentiary term. On cross-examination she stated she had favored five years probation, and that the factors influencing her in changing her vote were the discussion of the parole law and her fear that another jury might give him greater punishment if he were retried.

The State cites *McCartney v. State*, Tex. Cr.App., 542 S.W.2d 156, for the propositions (1) that the trial court could resolve conflicts in the testimony of the jurors, and find that only the *possibility* of parole after eight months was discussed; and (2) that it is common knowledge that inmates are sometimes released on parole, and not every mention of the parole law requires reversal. In the record before us, however, there is no dispute [1] that the parole law was discussed extensively, and that it did affect jury deliberations on the issue of whether to grant or deny probation.

■ Although not every mention of the parole law requires reversal, *"[J]ury discussion of the parole laws is always misconduct,"* *Moore v. State*, Tex.Cr.App., 535 S.W.2d 357. In *Moore* the Court continued:

". . . whether the same constitutes such error as to mandate reversal depends upon the particular circumstances of each case. *Heredia v. State*, Tex.Cr. App., 528 S.W.2d 847.

"The trial court should always attempt to eliminate the possibility of such misconduct by instructing the jury at the punishment phase that it should not discuss or consider the possible effects of the parole laws or system."

In *Heredia v. State*, supra, the Court stated:

". . . discussion of the parole law, although common knowledge, would in every case constitute jury misconduct since the parole law is not for the jury's consideration.[4]

"[4] . . . The determination to grant parole, if and when made, rests upon many facts and events not known to the jury, not proper for consideration by the jury, and not having occurred at the time of trial. Article 42.12, Sec. 12 et seq., V.A.C.C.P. *The decision to parole, if and when made, is beyond the province of the courts . . . and therefore of the jury, and is exclusively a matter within the province of the executive branch of government,* under proper regulation by the legislative branch. Article IV, Section 11, Texas Constitution." (Emphasis added.)

■ It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof. Article II, Sec. 1 of the Texas Constitution provides for the separation of governmental powers among the three distinct departments, the executive, legislative, and judicial. It is well established under this Article that:

---

1. Six of the jurors who appeared at the hearing and were sworn as witnesses did not testify.

"[A] power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others. . . . And *any attempt by one department of government to interfere with the powers of another is null and void.*" *Ex parte Giles,* Tex.Cr.App., 502 S.W.2d 774; *Smith v. Blackwell,* Tex.Cr.App., 500 S.W.2d 97. (Emphasis added.)

Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch, Art. IV, Sec. 11, Texas Const.; and any action by the judicial branch to frustrate or delay the exercise of that power by the executive branch is as much of an unconstitutional interference as is an attempted usurpation of that power. See, *Ex parte Giles* and *Smith v. Blackwell,* supra, for unconstitutional grants of authority to usurp clemency powers.

This is the constitutional basis for the established rule that discussion of the parole law is always jury misconduct. The issue remains, whether, in the terms of Art. 40.03(8), supra, the misconduct here was such that "the court is of opinion that the defendant has not received a fair and impartial trial." The uncontradicted record shows that the parole law was discussed extensively, and that it did affect jury deliberations on the issue of whether to grant or deny probation, in that two jurors changed their votes from granting probation to denying probation.

The State argues that the effect of the discussion was to reduce the punishment assessed by the jury, and therefore appellant was not harmed. It is true that the two jurors who testified did reduce the term for which they would vote from eight and five years to two years. The assessment of a term of punishment, however, is only one of the issues that was before the jury. The issue of probation was also before the jury, and on that issue appellant was clearly harmed.

 The State cites *Lechuga v. State,* Tex.Cr.App., 532 S.W.2d 581, for the proposition that five years probation is a greater

punishment than three years confinement. That was not the holding in *Lechuga.* In the majority opinions on both original submission and on rehearing it was held that assessment of punishment at five years was greater than that of three years. Probation, the Court indicated, and on this point the dissenters agreed, is designed to serve for the benefit of the convicted defendant. It is designed to be rehabilitative and ameliorative. Some of these benefits are clear from the following excerpts from Art. 42.-12, V.A.C.C.P.:

" 'Probation' shall mean the release of a convicted defendant by a court under conditions imposed by the court for a specified period during which the imposition of sentence is suspended." [Section 2(b)]

"If probation is granted by the jury the court may impose only those conditions which are set forth in Section 6 hereof." [Section 3a, last paragraph]

"Where probation is recommended by the verdict of the jury as provided for in Section 3a above, a defendant's probation shall not be revoked during his *good behavior,* so long as he is within the jurisdiction of the court and his residence is known, except in accordance with the provisions of Section 8 of this Article." [Section 3b]

"At any time, *after the defendant has satisfactorily completed one-third of the original probationary period or two years of probation, whichever is the lesser, the period of probation may be reduced or terminated by the court. Upon the satisfactory fulfillment of the conditions of probation, and the expiration of the period of probation, the court,* by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the probation period and *shall discharge the defendant. In case the defendant has been convicted* or has entered a plea of guilty or a plea of nolo contendere, *and the court has discharged the defendant hereunder,* such court may set aside the verdict or permit the defendant to withdraw his plea and shall

dismiss the accusation, complaint, information, or indictment against such defendant, *who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted* or to which he has pleaded guilty, except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense." (Emphasis added.)

Punishment and probation are clearly distinct and separate issues, *Woods v. State,* Tex.Cr.App., 532 S.W.2d 608, and the State misreads *Lechuga,* supra, when it argues the reduction in punishment shows appellant was not harmed. Both in *Lechuga* and here, as also held in *Woods,* supra, probation is a separate issue. The defendant has a right to have that issue determined by the jury. *Blount v. State,* Tex.Cr.App., 509 S.W.2d 615.

We conclude from this record that the jury misconduct of discussion of the parole law was harmful and denied appellant a fair and impartial trial. The discussion was extensive and adversely affected two jurors' consideration of the probation issue. We need not address the issue raised under Article 40.03(7), supra.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The only issue on this appeal is whether harmful jury misconduct occurred because of a discussion of the parole law.

John Ford Roberts, who was 56 years of age, suffered a fractured skull and blindness in one eye with a pool cue at the hands of James Sanders, the appellant, who was 24 years of age. On March 20, 1975, Bill Selfridge and Roberts, who was a tenant of Bell Place Apartments, went to the recreation area to play pool. Several men, including Sanders, were playing pool and continued to play. Roberts told them that a tenant in the apartments could have only two guests and asked them to take turns and the group became belligerent. After a heated exchange, Sanders jumped up with a pool cue and said to Roberts, "You old son-of-a-bitch, I *am going to beat your* brains out." Five or six of the pool players restrained Sanders and took him with them and left. Sanders returned and ran toward Roberts and hit him with a pool cue knocking him face down on the floor.

Dr. William T. Price, an Amarillo neurosurgeon, examined Roberts after the injury. He testified that Roberts had multiple fractures of the skull and the nose. The optic nerve to the left eye had been severed as a result of the fractures and Roberts lost the sight of his left eye.

At the hearing on the amended motion for new trial, two jurors testified that some members of the jury discussed the parole law during the deliberations on punishment. Juror Erma Rigdon testified that there was a lengthy discussion involving what portion of any sentence appellant would have to serve. She stated that one juror, who was called "Colonel", professed to be familiar with the penitentiary and parole systems because he had had prior experience with the military court-martial system. According to Rigdon, the "Colonel" stated that appellant would *serve no more than eight months of a two-year sentence if he "behaved himself."*

Rigdon further testified that "a couple of other men said the same things as far as parole was concerned . . .", and that after this discussion she agreed to change her vote from eight years probation to two years in prison.

Juror Konni Campbell testified that the men in general, and the "Colonel" in particular, discussed the parole law at length during the deliberations. She further testified that "Colonel" and others stated that if appellant was sentenced to two years in prison he *would serve between six and eight months and then be eligible for parole.*

Campbell stated that some arguments developed during the discussion and that the information regarding parole was utilized to persuade other members of the jury to assess a prison term rather than probation. She further stated that prior to this discus-

sion she had voted for probation for five years and that after such discussion she changed her vote and agreed to assess punishment at two years. Six other jurors were present at the hearing but they were not called to testify.

Article 40.03, V.A.C.C.P., provides in part:

"New trials, in cases of felony, shall be granted the defendant for the following causes,

" * * *

"(7) Where the jury, after having retired to deliberate upon a case, has received other evidence; . . .

"(8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial. . . ."

In *Heredia v. State,* 528 S.W.2d 847 (Tex. Cr.App.1975), we held that jury discussion of the parole law requiring reversal may constitute, depending upon the facts of the case, receipt of other testimony after retiring to deliberate or misconduct that has deprived the defendant of a fair and impartial trial. We then observed that it is common knowledge that inmates of the Texas Department of Corrections are sometimes released on parole. Thus, a mere allusion to the parole law would not constitute the receipt of other evidence. But, we stated that "a misstatement of the law, by being incorrect, would constitute other evidence, since by being false it certainly could not be classified as 'common knowledge.'" 528 S.W.2d at 853.

We further observed in *Heredia* that discussion of the parole law would constitute jury misconduct, but whether the defendant was denied a fair and impartial trial must be determined upon the facts of the individual case.

In *McCartney v. State,* 542 S.W.2d 156, 162 (Tex.Cr.App.1976), we stated that "[i]t is well established that issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge, and where there is conflicting evidence there is no abuse of discretion where the motion for new trial is over-

ruled. . . ." In the instant case, there was a conflict in the evidence. Juror Campbell testified that the "Colonel" and others said that appellant would be eligible for parole if he had good behavior. Juror Rigdon testified that the "Colonel" and others said that appellant would get out in eight months provided he had good behavior. This constitutes two different versions of the statements made by the jurors. The trial judge apparently chose to believe the juror Campbell who testified that the statements that appellant, upon good behavior, would be eligible for parole after serving six to eight months on a two-year term. This was in the province of the judge.

It is possible for one to be considered for parole after having been confined for six to eight months on a two-year sentence.

Article 42.12, Section 15(a), V.A.C.C.P., provides that an inmate may be released who has served one-third of the maximum sentence imposed.

Article 6181–1, V.A.C.S., provides that an inmate may earn good conduct time as follows:

"Sec. 3. (a) Inmates shall accrue good conduct time based upon their classification as follows:

"(1) 20 days for each 30 days actually served while the inmate is classified as a Class I inmate;

"(2) 10 days for each 30 days actually served while the inmate is classified as a Class II inmate; and

"(3) 10 additional days for each 30 days actually served if the inmate is a trusty."

Section 4 of the act provides that good conduct time applies to eligibility for parole as provided for in Section 15 of Article 42.12 of the 1965 Code of Criminal Procedure as amended.

Article 6166x–1 of Vernon's Annotated Civil Statutes provides that inmates shall receive for parole purposes credit for overtime work "double the hours so worked." Cf. *Ex parte Weaver,* 537 S.W.2d 252 (Tex. Cr.App.1976), where the Court noted that overtime could not be deducted from the term of sentence for discharge purposes.

With all or part of the above possible credits, the statement that appellant could be considered for parole with good behavior after serving from six to eight months was not a misstatement of the law. See *Howard v. State,* 505 S.W.2d 306 (Tex.Cr.App. 1974), and *Jones v. State,* 462 S.W.2d 578 (Tex.Cr.App.1970).

In *Mays v. State,* 167 Tex.Cr.R. 339, 320 S.W.2d 13 (1959), this Court held that a statement of a juror that if given a five year sentence Mays would have to serve a year and three months on a five year sentence before being eligible for parole was a misstatement of the law.

It can be seen from the statutes cited that an inmate may be eligible for parole when less than one-third of the sentence has been served. The *Mays* case which held that a statement that an inmate may be eligible for parole when he has served less than a third of his sentence is incorrect and

it should be overruled. We should adopt the reasoning of the dissenting opinion in that case.[1]

The State contends that the two jurors voted to decrease the punishment because they changed their vote for probation terms of five and eight years to two years' confinement after the jurors discussed parole. It relies upon *Lechuga v. State,* 532 S.W.2d 581 (Tex.Cr.App.1975), in which this Court held by a three to two vote that five years' probation was more punishment than three years' confinement in the Department of Corrections.

The majority in this case is inconsistent. It holds in effect that two years' confinement is a more severe punishment than eight or five years of probation. There is no logical way to distinguish this case from *Lechuga.* The majority should admit its error and overrule *Lechuga* because a term

---

1. Mays was retried and he was again assessed a punishment of five years After Mays was released on parole, the late James Bowie, who was then Assistant District Attorney in Dallas County, wrote to the clerk what he designated "State's Continuous Motion for Re-rehearing." It is as follows:

 "Now comes the State of Texas and respectfully moves that the Honorable Glenn Haynes, Judge Per Curiam, to set aside the opinion heretofore rendered by the lower Court of Criminal Appeals in the case styled *State v. Mays,* [167 Tex.Cr.R. 339], 320 S.W.2d 13, and to hold the same for naught. STATEMENT OF FACTS

 "The appellant, Willie Odell Mays, was convicted in Dallas County in the year 1958 and was sentenced to serve a 5-year term in our beautiful penitentiary for the unlikely offense of murder without malice.

 "Not desiring to avail himself of the exercise and friendly atmosphere of our Department of Corrections, he appealed his case to the lower court—the Court of Criminal Appeals.

 "To his surprise, as well as ours, the case was actually reversed—no kidding.

 "The said lower Court found through some legal trickery that a juror during deliberations stated, 'As I recall, it was mentioned under a five year sentence that he would be eligible for—after year and three months." (See: [167 Tex.Cr.R. 339] 320 S.W.2d 13, 14).

 "Judge Dice, in reversing this just conviction, held in said opinion:

 " 'Under the provisions of this statute appellant would not have been eligible for parole and release under a five year sentence

until he had served a year and 8 months which was for a longer period than that stated by the juror. The testimony of the three jurors shows that the statement was made while the jury was divided on the punishment to be assessed and prior to arriving at their verdict in the case.'

 "The lower court therefore held that Willie Odell could not be at liberty (as a matter of law) until after he had served one year and 8 months . . . i. e., 20 months, and the juror erred where he stated he could be sprung in 15 months.

 "Motion for rehearing was overruled without written opinion.

 "Willie Odell was again tried and again given 5 years, and again he appealed.

 "However, the court below tired of Willie Odell and affirmed his second 5-year sentence.

 "Yesterday, Willie Odell came to the office of the District Attorney of Dallas County. He was in good health and good spirits, having been released from the pen after having served his 5-year sentence in 13 months and 13 days, 6 months and 17 days less than Judge Dice guessed as a matter of law and some 1 month and 17 days less than the juror figured.

 "We therefore respectfully request the lower appellate court be reversed and the case against Willie stricken from the South Western Reporter.

 "If we are wrong in this regard, will you kindly explain how in the hell Willie got in my office."

of confinement of three years is more punishment than five years' probated. Also, *Lechuga* should be overruled for the additional reasons stated in the dissenting opinion therein.

The trial judge did not abuse his discretion in overruling the motion for new trial.

There being no reversible error, the judgment should be affirmed.

Before the Court en banc.

DALLY, Judge, dissenting to the overruling of the State's motion for Rehearing without Written Opinion.

I dissent to the overruling of the State's Motion for Rehearing without written opinion. The panel opinion on original submission reversed the judgment, saying: ". . . there is no dispute that the parole law was discussed extensively, and that it did affect jury deliberations on the issue of whether to grant or deny probation . . ." and the opinion then concluded: ". . . the jury misconduct of discussion of the parole law was harmful and denied appellant a fair and impartial trial. The discussion was extensive and adversely affected two jurors' consideration of the probation issue." The rule applied is that: if there is extensive discussion of the parole law and a juror testifies he changed his vote the judgment will be reversed.

The panel, as did the appellant, relies on the dicta in *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App.1975). In *Heredia v. State,* supra, after a review of a number of cases, it was said:

"The cases discussed establish that there has been an inconsistency of standards. Authority may be cited for a standard requiring a showing that (1) a misstatement of the law (2) asserted as fact (3) by one professing to know the law (4) which is relied upon by other jurors (5) who for that reason change their vote to a harsher punishment, before reversible error is shown; but likewise authority may be cited which would require only a showing that a statement on the parole law was made and it was either untrue or it was harmful. Much distance lies between these extremes.

"In determining the law on this matter, we turn to the statutory foundation upon which the issue ultimately rests. Article 40.03, V.A.C.C.P., provides in part:

" 'New trials, in cases of felony, shall be granted for the following causes, and for no other:

\* \* \* \* \* \*

" 'Where the jury, after having retired to deliberate upon a case, has received other testimony; . . .

" '8. Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial . . .'

"Does jury discussion of the parole law requiring reversal constitute receiving other testimony after retiring to deliberate or misconduct that has deprived the defendant of a fair and impartial trial? Some decisions ordering reversal have indicated one ground, some the other.

\* \* \* \* \* \*

"We hold that either principle may apply, depending upon the facts of the case.[1]

---

1. In deciding the case of *Heredia v. State,* supra, it was said:

"We now examine the facts in this case to determine whether appellant is entitled to a new trial under either of the statutory grounds stated above. The record of the hearing on the motion for new trial shows that after the complained of statement the jury foreman promptly instructed the jurors that it would not be proper for them to consider the extraneous information communicated to them. It further reflects that thereafter the matter was not discussed.

"If the statement be considered 'other testimony' under Article 40.03(7), V.A.C.C.P., in view of the prompt instruction by the foreman and the fact that it was not thereafter discussed, we conclude that it cannot be construed as having been 'detrimental to appellant.' *Marquez v. State,* 172 Tex.Cr.R. 363, 356 S.W.2d 797; *Grizzell v. State,* 164 Tex. Cr.R. 362, 298 S.W.2d 816. We likewise conclude, from the same considerations, that the statement complained of did not constitute misconduct depriving appellant of a 'fair and impartial trial' under Article 40.03(8), supra.

If the inconsistency mentioned in *Heredia* existed, it has persisted since *Heredia* was decided. See e.g. *Beck v. State,* 573 S.W.2d 786 (Tex.Cr.App.1978); *Carrillo v. State,* 566 S.W.2d 902 (Tex.Cr.App.1978; *McIlveen v. State,* 559 S.W.2d 815 (Tex.Cr.App.1977); *Ashabranner v. State,* 557 S.W.2d 774 (Tex. Cr.App.1977); *Sweed v. State,* 538 S.W.2d 119 (Tex.Cr.App.1976).

To show that a jury's discussion of the parole law constitutes reversible error, we should readopt the test, extracted from a number of earlier cases, which was stated and discussed, but rejected in *Heredia v. State,* supra. That test is that for reversible error to result, it must be shown that there was:

(1) a misstatement of the law

(2) asserted as a fact

(3) by one professing to know the law

(4) which is relied upon by other jurors

(5) who for that reason changed their vote to a harsher punishment.

The cases from which this test has been extracted are fully discussed in *Heredia v. State,* supra.

In applying this rule to the instant case we should first determine whether there was a misstatement of the law. One juror on the motion for new trial testified that another juror who professed to know the law stated that the appellant would not have to serve more than eight months *if he behaved himself.* Another juror testified that the juror who professed to know the law stated that a defendant sentenced to two years imprisonment would serve between six and eight months and would be eligible for parole. In resolving the conflict between these statements it may be decided that the statement made, by the juror professing to know the law, was that the appellant would be eligible for parole and would not have to serve more than eight months if his punishment were assessed at imprisonment for two years and he behaved himself. This was not a misstatement of the law. The appellant would be eligible for release on parole when his calendar time

E. g., *DeLaRosa v. State,* supra [167 Tex. Cr.R. 28, 317 S.W.2d 544].

served plus good conduct time equals one-third of the maximum sentence imposed. Art. 42.12, Sec. 15(b). The maximum sentence assessed in the instant case is two years. Under the statutory provision the appellant, "if he behaved himself," would be eligible for release on parole within eight months.

Reversible error has not been shown. The State's Motion for Rehearing should be granted and the judgment should be affirmed.

ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ., join in this dissent.

"The ground of error is overruled.
"The judgment is affirmed."