

# The Attorney General of Texas

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

April 29, 1981

Honorable Oscar H. Mauzy
Chairman
Senate Committee on Jurisprudence
Texas Senate, State Capitol
Austin, Texas 78711

Opinion No. MW-330

Re: Whether trial judge may constitutionally instruct jurors about the possible effects of good conduct time and parole time

Dear Senator Mauzy:

You have requested our opinion as to whether a trial judge may constitutionally instruct jurors about the possible effects upon a prisoner's sentence of parole and good conduct time. We assume that your question refers to proposed legislation which may permit or require such instruction, although you have not submitted to us any specific proposal.

Texas law on the subject of jury discussion of parole matters has long been uncertain and confused. The Texas Court of Criminal Appeals acknowledged this circumstance in Heredia v. State, 528 S.W. 2d 847, 852 (Tex. Crim. App. 1975):

> The cases... establish that there has been an inconsistency of standards. Authority may be cited for a standard requiring a showing that (1) a misstatement of the law (2) asserted as fact (3) by one professing to know the law (4) which is relied upon by other jurors (5) who for that reason change their vote to a harsher punishment, before reversible error is shown; but likewise authority may be cited which would require only a showing that a statement on the parole law was made and it was either untrue or it was harmful.

The court then discussed the "statutory foundation upon which the issue ultimately rests," article 40.03 of the Code of Criminal Procedure, which provides that new trials in felony cases shall be granted, inter alia:

> 7. Where the jury, after having retired to deliberate upon a case, has received other evidence;
>
> . . .
>
> 8. Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial.

p. 1061

The court indicated that some previous decisions had said that jury discussion of the parole law violates subdivision (7) of article 40.03, in that the jury has "received other evidence" relating to the parole law. See Spriggs v. State, 268 S.W. 2d 191 (Tex. Crim. App. 1954). Other decisions had said that such jury discussion contravenes subdivision (8), by denying a defendant "a fair and impartial trial." See Mays v. State, 320 S.W. 2d 13 (Tex. Crim. App. 1959).

The Heredia court believed that either statutory provision might be applicable to jury discussion of the parole law. 528 S.W. 2d at 852. The mere mention of the existence of the law is not prohibited by subdivision (7), but a misstatement of the law always violates that provision. Id. at 852-53. Under the reasoning of Heredia, a statute instructing the jury on the parole law would cure any problem arising under subdivision (7), however. Since the jury would be apprised of the parole law as part of its charge, discussion of it could not constitute receipt of "other evidence."

As to subdivision (8) of article 40.03, the Heredia court said that discussion of the parole law is always jury misconduct, because the parole law is not for the jury's consideration. Id. at 853. Again, however, the mere mention of it is not sufficient to deprive a defendant of "a fair and impartial trial." Likewise, a discussion of the law, followed by an instruction that it should not be further discussed, is not violative of subdivision (8), provided the law is not discussed after the instruction. Id. The court emphasized that the "degree of misconduct" sufficient "to deny the defendant a fair and impartial trial must be determined upon the facts of the individual case." Id. As to the particular facts of Heredia, the court concluded that, under either subdivision (7) or (8), no reversible error occurred. Id.

Although the court in Heredia alluded in a footnote to a possible constitutional basis for the standard that it announced, 528 S.W. 2d at 853 n.4, the decision really rests upon the statutory language of subdivisions (7) and (8) of article 40.03. Since, however, the standard of subdivision (8) is that of "fair and impartial trial," that statute incorporates a constitutional basis for the prohibition against jury discussion of the parole law. To the extent that such discussion denies a defendant a "fair and impartial trial," it contravenes article I, section 19 of the Texas Constitution, the due process clause, see Vogt v. Bexar County, 23 S.W. 1044, 1046 (Tex. Civ. App. 1893, writ ref'd) and commentary to article I, section 19, at 447, and article I, section 10, which guarantees every criminal defendant "a speedy public trial by an impartial jury." If jury discussion of the parole law is sufficient to deprive a defendant of a fair and impartial trial, a statute requiring instruction on that issue, which would in effect authorize such discussion, might, in light of Heredia, be insufficient to overcome the constitutional prohibition. Subsequent decisions from the court of criminal appeals, however, indicate that such a statute, if properly limited, might satisfy the constitutional standard.

Heredia was followed three years later by Sanders v. State, 580 S.W. 2d 349 (Tex. Crim. App. 1978), in which the court found that a jury had discussed the parole law extensively and that the discussion had affected jury deliberations on the issue of whether to grant or deny probation. 580 S.W. 2d at 351. By a 2-1 vote, the court affirmed its decision in Heredia, concluding that the jury's discussion was harmful and

that it denied the defendant a "fair and impartial trial" under subdivision (8). The court went further, however, and articulated "the constitutional basis for the established rule that discussion of the parole law is always jury misconduct." Id. at 352. The court declared:

> It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof. Article II, Sec. 1 of the Texas Constitution provides for the separation of governmental powers among the three distinct departments, the executive, legislative, and judicial. It is well established under this Article that:
>
> '[A] power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others. . . . And any attempt by one department of government to interfere with the powers of another is null and void.' Ex parte Giles, Tex. Cr. App., 502 S.W. 2d 774; Smith v. Blackwell, Tex. Cr. App., 500 S.W. 2d 97. (Emphasis added)
>
> Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch, Art. IV, Sec. 11, Texas Const.; and any action by the judicial branch to frustrate or delay the exercise of that power by the executive branch is as much of an unconstitutional interference as is an attempted usurpation of that power. . . .
>
> This is the constitutional basis for the established rule that discussion of the parole law is always jury misconduct. The issue remains, whether, in the terms of Art. 40.03(8), supra, the misconduct here was such that 'the court is of [the] opinion that the defendant has not received a fair and impartial trial.'

Id. at 351-52.

Although the court again relied upon subdivision (8) of article 40.03, and found that the discussion deprived the defendant of a fair and impartial trial, it did not refer either to article I, section 19 or to article I, section 10 of the Texas Constitution, nor did it imply that the right to a fair and impartial trial is a constitutional right guaranteed to a defendant. Instead the court found the constitutional basis of its decision in article II, section 1 and article IV, section 11 provisions which relate to the distribution of power among the three branches of government, and would seem to be in no way related to a defendant's right, constitutional or otherwise, to a fair and impartial trial. Nevertheless, the result of Sanders is clear: a statute which encouraged extensive discussion of the parole law by a jury would be deemed

unconstitutional by the court of criminal appeals as an interference by the judicial branch with the clemency powers committed to the executive branch.

Since it is only extensive discussion of the parole law and reliance by one or more jurors on that discussion in determining punishment that the court considers to contravene the constitution, it seems likely that a statute permitting or requiring the court to apprise the jury of the parole law would be held constitutional under the Sanders rationale so long as the judge admonished the jury not to discuss it.

More than a year after the 2-1 decision in Sanders, the full court, by a 5-4 margin, overruled the state's motion for rehearing without written opinion. Judge Dally, speaking for four members of the court, dissented from the decision to overrule. His opinion is instructive.

Judge Dally began by summarizing the majority ruling in Sanders: "if there is extensive discussion of the parole law and a juror testifies that he changed his vote the judgment will be reversed." 580 S.W. 2d at 356. Judge Dally noted that "the inconsistency mentioned in Heredia. . . has persisted since Heredia was decided." Id. at 357. He suggested a return to the pre-Heredia test, which holds that, in order to demonstrate reversible error, "it must be shown that there was:

(1) a misstatement of the law

(2) asserted as a fact

(3) by one professing to know the law

(4) which is relied upon by other jurors

(5) who for that reason changed their vote to a harsher punishment."

Id.

If the minority view in Sanders were to be adopted by the court, virtually any statute either permitting or requiring the trial judge to advise the jury about the parole law would be acceptable, since the minority test requires initially that, in order to show reversible error, there must occur a misstatement of the law. Any statute that required instruction to the jury about the parole law would presumably require an accurate recitation of that law. So long as the statute did not itself require or permit a misstatement of the parole law, it would satisfy the minority test of Sanders. But see Farris v. State, 535 S.W. 2d 608 (Tenn. 1976).

Since Sanders, the court of criminal appeals has rendered a number of further decisions regarding jury discussion of the parole law, decisions which may arguably be termed inconsistent. See, e.g., Nacol v. State, 590 S.W. 2d 481, 486 (Tex. Crim. App. 1979); O'Bryan v. State, 591 S.W. 2d 464, 478 (Tex. Crim. App. 1979); Jones v. State, 596 S.W. 2d 134, 138 (Tex. Crim. App. 1980). But neither the Heredia-Sanders test nor the

Sanders constitutional rationale has been repudiated, and we are obliged to conclude that the test remains operative. As a result, we believe that some version of a statute advising a jury about parole and good conduct time would probably be upheld as constitutional by the court of criminal appeals, so long as the limiting safeguard, discussed supra, was present.

We must note, however, two significant reservations regarding this conclusion: the separation of powers rationale relied on in Sanders is not logically compatible with this result — it ought to preclude the mere consideration of the parole law by a juror; and, if the dissenting view in Sanders were to prevail, no limiting safeguards would be required for a parole instruction statute to pass constitutional muster.

Our consideration of your inquiry is further clouded by the Supreme Court of Tennessee's 1976 decision in Farris v. State, 535 S.W. 2d 608 (Tenn. 1976), which you have asked us to discuss. In that case, the court held unconstitutional a statute which required a trial judge to "charge the jury with respect to parole eligibility, certain powers and duties of the Board of Pardons and Paroles, good behavior allowances, and the allowance of honor time." 535 S.W. 2d at 609. Although the court found the statute invalid in part because of a caption defect, it also held it to be "impermissibly vague and impossible to apply." Id. at 613. The court then noted that:

> [j] urors of reasonable or common understanding and intelligence
> are not capable of understanding the various ramifications of
> the parole system.

Id. As the concurring opinion points out, the court can't mean that the statute requiring trial judges to charge juries about the parole law is vague:

> its mandate to trial judges is plain enough. In my view, the
> vagueness and confusion to which Mr. Justice Henry refers
> relates to the instructions regarding parole eligibility, etc.,
> which Chapter 163 would require trial judges to give to juries
> trying felony cases.

Id. at 615.

To complicate matters, the court also raised the fair trial issue, and, like the Texas Court of Criminal Appeals, it failed to refer to any constitutional basis therefor:

> Jurors should not be permitted to speculate on the length of
> sentences, discretionary parole, the accumulation of good and
> honor time and a whole conglomeration of contingent events
> which, if they come to pass at all, will come to pass in the
> future. Very heavily involved is the constitutional right of a
> defendant to a fair trial.
>
> This is trial 'by guess and by golly,' and we will not
> countenance it by upholding a statute which offends every sense
> of fairness and every precept of due process.

It tends to make a jury speculate on the length of time a convicted defendant will be required to serve and further tends to breed irresponsibility on the part of jurors premised upon the proposition that corrective action can be taken by others at a later date.  A greater defect in the law stems from the fact that jurors tend to attempt to compensate for future clemency by imposing harsher sentences.

The matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration by a jury in determining the length of his sentence.

Id. at 614.  None of this discussion has any relevance to the court's ostensible reason for holding the statute unconstitutional — vagueness; but it comes close to the largely unarticulated "fair trial" rationale of Heredia and Sanders.  In our opinion, the Texas Court of Criminal Appeals would not adopt the reasoning of Farris which relates to vagueness.  But the court could certainly rely on the language relating to fair trial to void any statute which failed to contain the limiting safeguards previously discussed.

The present state of the law relating to the inquiry you have submitted is sufficiently uncertain as to preclude any confident prediction about how the court of criminal appeals might rule on a particular statute.  We believe it is instructive to note that no constitutional problem appears to exist under the Federal Constitution; in any event, no court has even suggested that advising a jury about parole might contravene any portion of the United States Constitution.  The court of criminal appeals has a choice of state constitutional doctrines, however, with some support in decisional law, including separation of powers, vagueness and due process, which it may rely upon to invalidate a statute which requires or permits a jury instruction about parole and good conduct time.  We believe that, at present, the court would be likely to uphold such a statute, so long as it required the judge to admonish the jury not to discuss the subject.

## S U M M A R Y

The courts would be likely to uphold a statute which authorizes a judge to instruct jurors about the possible effects upon a prisoner's sentence of parole and good conduct time, so long as it required the judge to admonish the jury not to discuss the subject.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin
Bruce Youngblood