Nathaniel WILTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00517–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 30, 1992.
Rehearing Denied March 26, 1992.

W. Troy McKinney, Houston, for appellant.

Michael J. Guarino, Dist. Atty., B. Warren Goodson, Asst., Galveston, for appellee.

Before BASS, DUNN and HUGHES, JJ.

## OPINION

HUGHES, Justice.

Appeal is taken from a conviction for attempted aggravated sexual assault. Appellant pled not guilty. After hearing the evidence and argument, the jury found appellant guilty as charged in the indictment. The trial court assessed punishment at five-years incarceration.

We reverse in part and remand the case to the trial court to reassess punishment.

This is the second appeal of this cause. Appellant's first conviction was reversed and remanded due to a *Batson*[1] violation. *Wiltz v. State*, 749 S.W.2d 519 (Tex.App.— Houston [14th Dist.] 1988, no pet.).

In his first three points of error, appellant asserts that the trial court erred by assessing a more severe sentence after the second conviction (five-years confinement) than was assessed after the first conviction. Punishment, after the first conviction, was assessed by the trial judge at 10-years probation. *Wiltz*, 749 S.W.2d at 520.

 Unless there is evidence that a defendant's subsequent conduct justifies an increase, a trial court on remand may not assess greater punishment than was assessed in the first trial. *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969); *Bingham v. State*, 523 S.W.2d 948 (Tex.Crim.App.1975). The State concedes that there was no evidence presented, at the hearing on punishment, that would warrant the assessment of a more severe sentence. However, the State argues that the punishment assessed in this instance is less severe than the punishment originally assessed.

In support of its position, the State cites to *Lechuga v. State*, 532 S.W.2d 581 (Tex. Crim.App.1975). There, Lechuga was sentenced to three-years confinement for passing bad checks. A new trial was granted after which Lechuga was sentenced to five-years punishment and then placed on probation. Lechuga's probation was revoked, he was sentenced to 5-years imprisonment, and he appealed. On rehearing, the Court

of Criminal Appeals determined that the second sentence was more severe than the first and that it was therefore unconstitutional. *Lechuga*, 532 S.W.2d at 588. The court then remanded the case to the trial court for resentencing. *Id.* We cannot agree with the State's proposition that the Court of Criminal Appeals, by holding Lechuga's second sentence was unconstitutional, implicitly holds appellant's second sentence constitutional in this case.

The rationale for the *Pearce* rule is simply to prevent the fear of vindictiveness against a defendant, for having successfully attacked his first conviction, or chill the defendant's decision to appeal. *Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080; *United States v. Colunga*, 812 F.2d 196, 199 (5th Cir.1987). It seems axiomatic to us that the fear that probation could be lost, merely by successfully appealing a conviction, would have a chilling effect on a defendant's decision to appeal. Consequently, we hold that the sentence imposed here is unconstitutional.

Appellant's first three points of error are sustained.

In points of error four and five, appellant complains that the trial judge erred in sustaining the State's objection to portions of his closing argument.

Proper jury argument includes: 1) summation of evidence; 2) reasonable deductions from the evidence; 3) answers to the argument of opposing counsel; 4) a plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

 In this case, appellant complains that the trial court improperly sustained the State's objection to his closing argument because his argument properly summarized the evidence and made a reasonable deduction from the evidence. The record shows the following: the sexual assault occurred in the complainant's back yard; during the course of the assault the complainant's mother entered the back yard from the house and saw the assault; the complainant called out to her mother to call the police; the assailant then left the

**374**

back yard through a gate; appellant was picked up a few blocks from the complainant's home; and after the police brought the appellant before her, the complainant identified him as the person who had assaulted her.

During the evidentiary portion of the trial, appellant vigorously attempted to establish that the complainant had misidentified him. In closing argument, appellant's trial counsel tried to reinforce this theory by: 1) pointing out that appellant had been arrested walking down a moderately lit street in downtown Galveston while looking in a music store window; and 2) hypothesizing that the assailant would have hidden in an alleyway to avoid apprehension. The State objected on the basis that appellant's trial counsel's argument called for speculation and personal opinion. The statements and objections occurred as follows:

> Appellant's counsel: This was a person that was hiding. The person that was her assailant hid from her until he had the opportunity to rush at her and knock her down. Now, would that—if Nathaniel Wiltz was the assailant and had taken the opportunity to hide in that alleyway, would he then skirted right out of the alleyway and walk down a moderately lit street in downtown Galveston in the same clothing, looking in the window at the music store? Is that the kind of activity you would suspect? He would have been in the alleyway.
>
> The State: Objection. Calls for speculation.
>
> The court: Sustained.
>
> Appellant's counsel: Ladies and gentlemen of the jury, the testimony from the officers is that there is a lot of alleyways between 15th and 21st. A lot of alleyways where this person could have been, and I am telling you I am pretty sure he probably did. The person that was the assailant.
>
> The State: Objection, your Honor. The counsel is injecting his personal opinion into the argument.
>
> The court: Sustained.
>
> The State: Thank you your Honor.

> Appellant's counsel: And you can draw your own inferences from the evidence that you hear, and I hope that you don't just skirt across the face of the evidence. You better dig a little deeper.

■ We agree with appellant's assessment that the statements were within the bounds of permissible argument. However, we cannot reverse a criminal conviction when we find beyond a reasonable doubt that the trial court's error made no contribution to the conviction or punishment. TEX.R.APP.P. 81(b)(2). In concluding that no harm was caused by the error here, we note that the State's objections were made after appellant's counsel had made his argument that the assailant was hiding in the alleyway. Moreover, the trial court merely sustained the State's objection, and did not instruct the jury to disregard appellant's counsel's argument.

Points of error four and five are overruled.

In points of error six and seven, appellant asserts that the State knowingly permitted the jury to hear perjured testimony.

■ These points of error concern conflicting testimony given by complainant's mother regarding her ability to identify appellant. Two hours prior to trial, at a pretrial identification hearing, the complainant's mother was asked whether, during the assault, she would have recognized her daughter in the back yard had her daughter not cried out for help. She answered, "I don't know that I could have at that time." During trial, she testified that she could recognize her daughter during the assault and saw appellant's face well enough to positively identify him. Appellant asserts that the testimony at trial was perjured and the State had a duty to correct it.

In support of this argument, appellant sites to *Ex parte Adams*, 768 S.W.2d 281 (Tex.Crim.App.1989). In that case, the Court of Criminal Appeals, in setting aside Adams' conviction, chastised the Dallas County District Attorney's office for intentionally failing to disclose witnesses' prior inconsistent statements, knowingly using a witness' perjured testimony, failing to cor-

rect perjured testimony, and improperly coaching witness. *Adams*, 768 S.W.2d at 291–93.

In this case, the purported perjured testimony was elicited during appellant's cross-examination of the witness. Appellant has offered no evidence to show the State failed to disclose, or even knew whether or not, the testimony was perjured. Appellant's points of error are overruled.

The judgment is affirmed, the sentence reversed, and the cause remanded for re-sentencing.

DUNN, J., dissenting in part; concurring in part.

DUNN, Justice, concurring and dissenting.

I agree that the judgment should be affirmed; however, I do not find that appellant received a more severe sentence on retrial than he received in his first trial.

The majority is correct in holding that unless a defendant's conduct after the first trial justifies a more severe sentence, a trial court on retrial may not assess a defendant a more severe sentence than he or she received in the first trial. *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969).

The majority then holds that the five-years confinement appellant received on retrial was a more severe sentence than the 10–year probated sentence he received in his first trial. The majority makes this assumption without citing any authority to support the proposition that a five-year confinement sentence is more severe than a 10–year probated sentence. The *Pearce* and *Bingham* cases cited by the majority did not involve a situation such as the one involved in this case.

In *Pearce*, the defendant received a prison term of 12 to 15 years at his first trial and then the trial court, on retrial, added another eight years confinement to the prison term assessed in the first trial. 395 U.S. at 713–14, 89 S.Ct. at 2074–75. The Supreme Court held that the harsher sentence on retrial could not stand because the defendant was denied his constitutional

rights under the due process clause of the fourteenth amendment. *Id.* at 725–26, 89 S.Ct. at 2080–81. In *Bingham*, the defendant received a 10-year prison sentence in his first trial. *Bingham v. State*, 523 S.W.2d 948, 949 (Tex.Crim.App.1975). On retrial, the trial court assessed the defendant a 12-year prison sentence. *Id.* The court held that the sentence on retrial was a harsher sentence and could not stand under the reasoning of *Pearce*. *Id.* at 949–50. Both cases involved comparing prison sentences, not a probated sentence with a prison sentence.

The Texas case which has dealt with the issue of whether a prison sentence is a more severe sentence than a probated sentence is *Lechuga v. State*, 532 S.W.2d 581 (Tex.Crim.App.1975). In *Lechuga*, the trial court gave the defendant a three-year prison sentence at his first trial. *Id.* at 582. On retrial, the trial court gave the defendant a five-year prison sentence, which was probated for five years. *Id.* The defendant's probation was later revoked. *Id.* The Texas Court of Criminal Appeals held that the defendant was denied due process under the fourteenth amendment because the sentence he received on retrial was more severe than the sentence he received in his first trial. *Id.* at 587–88. In *Lechuga*, the State argued that a five-year prison sentence, which was probated for five years, was less severe than a three-year prison sentence. *Id.* at 586. The court rejected this argument because a five-year prison sentence is longer and more severe than a three-year prison sentence, notwithstanding the fact that the five-year prison sentence was probated. *Id.* at 587–88. The court held that the fact that the defendant received a probated sentence on retrial did not make the sentence received on retrial less severe. *Id.* at 588. "Does the granting of probation for five (5) years cure such constitutional error? We think not." *Id.*

The *Lechuga* court, following *McCulley v. State*, 486 S.W.2d 419 (Mo.1972), found that probation is not part of the definition of "sentence." *Id.* at 587. The court went on to hold that "to give the words 'more

severe' as used in *Pearce* a different meaning than longer sentence would make every question of whether *Pearce* has been violated 'purely subjective' defying 'objective application.'" *Id.* The court reasoned that only the length of the prison sentence should be considered when determining whether a sentence is more severe, not what impact the prison sentence, coupled with probation, may have on the individual defendant. *Id.* at 587.

As the *Lechuga* court points out, if it is held that a five-year prison sentence is more severe than a 10–year probated sentence, where will the lines be drawn for future cases? *Id.* at 587 n. 2. The majority implies that because any defendant would opt for probation over confinement, a prison sentence is more severe than a probated sentence. Applying the majority's reasoning, that the impact on the defendant determines whether a sentence is more or less severe than another, the question must be asked, is a two-month prison sentence more severe than a 10–year probated sentence? A six-month prison sentence? A one-year prison sentence? A two-year prison sentence? Where will the line be drawn?

Also, if the impact on the defendant is used to determine whether a sentence is more or less severe than another, must courts then consider "good time credits" a person may earn in prison, which would make the defendant eligible for parole after serving a fraction of his or her sentence? *See Lechuga,* 532 S.W.2d at 587 n. 2.

The majority opinion departs from the holding and reasoning adopted by the Texas Court of Criminal Appeals in *Lechuga.* As the court in *Sanders v. State,* 580 S.W.2d 349, 352 (Tex.Crim.App.1978) stated:

> The State cites *Lechuga* ... for the proposition that five years probation is a greater punishment than three years confinement. That was not the holding in *Lechuga.* In the majority opinions on both original submission and on rehearing it was held that assessment of pun-

ishment at five years was greater than that of three years.

Using simple arithmetic and supported by the *Lechuga* case, which was reaffirmed by the *Sanders* case, I would find in this case that a five-year prison sentence on retrial is not a longer or more severe sentence than the ten-year prison sentence that was probated, and originally imposed at the first trial.

I would overrule appellant's points of error.

I would affirm the judgment.