Opinion issued May 3, 2007






 




In The

Curt of Appeals

For The

First District of Texas






NO. 01-05-00345-CR






MICHAEL DEWAIN BOURDA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law No. 2

 Harris County, Texas

 Trial Court Cause No. 1267871





MEMORANDUM OPINION


 A jury found appellant, Michael Dewain Bourda, guilty of driving while
intoxicated and assessed his punishment at 75 days in jail and $1,000 fine. See Tex.
Pen. Code Ann. §§ 12.22, 49.04 (Vernon 2003). We determine whether the trial
court reversibly erred in sustaining the State's objection to a legitimate portion of
defense counsel's closing argument. We affirm.

Background


 In the early morning of November 4, 2004, appellant crashed his car into a
truck and a metal fence. Officers Charles Allen and Michael Wick of the Houston
Police Department responded to the accident and observed that appellant had a strong
odor of alcohol, slurred speech, and bloodshot eyes. Appellant did not appear to be
injured. Appellant told Officer Allen that he had not suffered any injuries in the
accident, that he was not on any medications, and that he did not have any medical
conditions. Officer Allen administered four field-sobriety tests to appellant: the
horizontal-gaze-nystagmus ("HGN") test, (1) the one-leg-stand test, the walk-and-turn
test, and the alphabet test. Appellant failed at least three of these field-sobriety tests. (2) 
Closing Argument


 In his sole issue, appellant argues that the trial court erred in sustaining the
State's objection to the following closing argument:

 Defense counsel: [Officer Allen] said that head trauma could
cause head injuries, could cause [the HGN]
test to be compromised. Well, the second
officer that got on the stand [Officer Wick]
testified that the way that--well, in his
opinion, that it is possible, due to the impact
of the accident that [appellant] could have hit
his head on the roof or could have hit his head
on the dashboard. 


 State: Objection, Your Honor, assumes facts not in
evidence.


 Court: Sustained.


 Defense counsel: Well, excuse me, if these things had possibly
happened to [appellant], this test could be
compromised. Like I said again, there was no
testimony or indication from the officer that
these tests was [sic] not compromised. There
was no video, and he did not put on any
testimony that said that these tests was [sic]
conducted in ideal or near perfect situation.


 Proper jury argument generally must encompass one of the following areas: 
(1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn
from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea
for law enforcement. (3) Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999);
Sandoval v. State, 52 S.W.3d 851, 857 (Tex. App.--Houston [1st Dist.] 2001, pet.
ref'd). To determine whether a party's argument properly falls within one of these
categories, we must consider the argument in light of the entire record. Sandoval, 52
S.W.3d at 857. 

 Officer Allen testified that there were a number of things that could cause a
person to have a reaction to the HGN test other than alcohol, such as a major head
injury or medical problems with his leg, back, neck, or head. Therefore, before
administering the HGN test on appellant, Officer Allen determined that appellant was
not disqualified from taking the HGN test for things such as medication, a medical
condition, or a head injury. On direct examination, Officer Allen testified as follows:

 State: What could cause a person to have H.G.N.?


 Officer Allen: Well, there are a number of things that can
cause a person to have H.G.N. and we try to
eliminate those. No. 1, being a major head
injury. And we ask them, do they have any
medical problems, do they have anything
wrong, as I like to say, with their leg, back,
neck, head or anything. We also look for
pupil size. We make sure that their pupils are
relatively the same size. If one is smaller and
one is extremely blown out, then that's
indicative of a head injury, so they're not a
good candidate for the test. There are certain
types of medications, like I said, anything in
the central nervous system depressant
category can cause nystagmus. . . .

 During cross-examination, Officer Wick testified that it was possible for
appellant to have sustained a head injury in the accident:

 Defense Counsel: And is it possible that a person that being
jerked or pushed up, based with that type of
force, could have bumped his head on the roof
of the car if he didn't have a seat belt on?


 Officer Wick: Yes.


 Defense counsel: Okay. Is it possible to also say that he could
have probably hit the dashboard with his
head?


 Officer Wick: It's possible, yes.


 Defense counsel: So, it is possible, just by the mere--by what
you saw that [appellant] could have had some
type of head trauma?


 Officer Wick: Yes.


Considering the above-quoted testimony of both officers, we agree with appellant's
assessment that defense counsel's argument was within the bounds of permissible
argument. See Wiltz v. State, 827 S.W.2d 372, 374 (Tex. App.--Houston [1st Dist.]
1992), rev'd on other grounds, 863 S.W.2d 463 (Tex. Crim. App. 1993). 
Accordingly, the trial court erred in sustaining the State's objection.

 Appellant asserts that the error here is constitutional; the State contends that
it is "other error." See Tex. R. App. P. 44.2(a), (b). We decline to resolve this
controversy because the error is harmless under either harm standard. See Tex. R.
App. P. 44.2(a), (b). Nevertheless, we shall examine harm under the more stringent
analysis and reverse unless we can determine beyond a reasonable doubt that the error
did not contribute to appellant's conviction or punishment. See Tex. R. App. P.
44.2(a). We examine the source of the error, the nature of the error, whether or to
what extent it was emphasized by the State, its probable collateral implications, how
much weight jurors probably placed on the error, and whether declaring the error
harmless would encourage the State to repeat it with impunity. See Thompson v.
State, 89 S.W.3d 843, 853 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (quoting
Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989)).

A. Source of Error

 The State objected to a defense argument that accurately reflected testimony
given by State's witnesses, as assuming facts in evidence. The trial court sustained
the State's objection. 

B. Nature of Error

 The testimony being argued by defense counsel was itself speculative in the
sense that the officers were asked only if it were possible that appellant could have
hit his head and, if appellant had had head trauma, whether that fact could that have
caused a different result on the HGN test. There had been no evidence of any head
trauma. To the contrary, the evidence was that appellant had told the officers that he
was not injured and the officers observed no sign of injury. Thus, the prosecutor and
the trial court erred by mistaking speculative evidence as no evidence. There had
been no objection by the State regarding the speculative nature of the testimony; thus,
it was in evidence. By sustaining the State's objection based on assuming facts not
in evidence, the trial court negated the evidence defense counsel had developed,
regardless of how speculative that evidence was.

C. Emphasis by State

 The prosecutor made no argument referring to head injuries or the lack thereof. 
There was no emphasis of the error by the State. 

D. Probable Collateral Implications

 It is difficult to see any collateral implications when the jury was not instructed

to disregard and defense counsel continued his argument by repeating, without
objection, that if these things had happened to appellant, the HGN test would have
been compromised. See Wiltz, 827 S.W.2d at 374 (under harm standard akin to that
of Texas Rule of Appellate Procedure 44.2(a), holding that error in sustaining State's
objection to closing argument was harmless because trial court did not instruct jury
to disregard argument); Drake v. State, 860 S.W.2d 182, 186 (Tex. App.--Houston
[14th Dist.] 1993, pet. ref'd) (similar holding); see also Culton v. State, 95 S.W.3d
401, 406-07 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (holding that error in
sustaining State's objection to appellant's closing argument was cured because
appellant made essentially same argument later without objection); Rische v. State,
746 S.W.2d 287, 291 (Tex. App.--Houston [1st Dist.] 1988, no pet.) (similar holding;
also noting that court did not instruct jury to disregard defense argument).

E. Weight Jurors Would Place on Error

 There are several reasons that jurors would not have placed any weight on the
error. First, as pointed out above, the jury was not instructed to disregard defense
counsel's argument, which he essentially repeated without objection. Second,
defense counsel's argument was related only to one of the four field-sobriety tests that
Officer Allen had administered. Appellant failed several of those tests, not solely the
HGN test. Defense counsel thoroughly argued to the jury that the other field-sobriety
tests could have been inaccurate for other reasons. (4) Third, after the trial court
sustained the State's objection, defense counsel argued to the contrary of his position
that appellant's physical and mental faculties had been impaired in the accident and
described appellant as "perfectly normal" the night that appellant was arrested. (5) 

F. Effect of Declaring Error Harmless

 Appellant argues that declaring the error here harmless would encourage
objections to arguments highlighting all facts prejudicial to the State's case. We see
the situation here as unusual, a case in which the State and trial court mistook
speculative evidence for no evidence. Had the State objected to argument
emphasizing actual prejudicial evidence, we doubt that the trial court would have
been prone to sustain. 

G. Resolution

 Because we have found no possible harm under even the more stringent harm
analysis, we hold that the error here was harmless. See Tex. R. App. P. 44.2(a).

 We overrule appellant's sole issue.

Conclusion


 We affirm the judgment of the trial court.



 

 Tim Taft

 Justice

Panel Consists of Justices Taft, Alcala, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).

 
1. The horizontal-gaze-nystagmus ("HGN") test measures a person's involuntary
physiological reaction to alcohol. When a person consumes alcohol, it causes
the tiny eye muscles to move slowly, which causes the eye to have a bouncing
or twitching movement.
2. Appellant contends that he passed one of the field-sobriety tests. The State
does not dispute appellant's contention; however, it is unclear from the record
which, if any, of the field-sobriety tests that appellant passed.
3. While the first three categories are as applicable to defense jury arguments as
to State's jury arguments, the fourth category is more applicable to State's jury
arguments. The defense analog might be a plea for leniency or mercy. 
4. For example, appellant argued that the one-leg-stand and the walk-and-turn
tests were confusing because it was not clear when the tests started, which was
one of the reasons that Officer Allen provided for appellant's failing them. 
5. Appellant argued in closing arguments:


 In fact, the only direct evidence that we had to show 
[appellant's] mental and physical state on that day was the
video shown to you when [appellant] was in the video
room. I don't know what you saw, but I saw a gentleman
walking in that room, perfectly normal, without the
assistance of anybody, perfectly capable of walking in by
himself. I saw a gentleman that when he was told to stand
up in a particular spot stood there still. He had that black
line that came behind his head from the wall, never
swayed. I saw a gentleman that when he was asked his
name, with no hesitation, with no slurred speech, said his
name. I saw a gentleman that when he was asked the
origin of his name, with no hesitation said French. I saw a
gentleman that when he was asked if you want to continue
the test said, no, without hesitation, no slurred speech and
normal. I saw a gentleman that after the interview was
concluded and was asked to walk out of the room, walked
out of the room with no assistance and normally.