Charles Edward PATTON, Appellant,

v.

The STATE of Texas, State.

No. 2–85–290–CR.

Court of Appeals of Texas, Fort Worth.

Sept. 25, 1986.

John H. Hagler, Dallas, for appellant.

Tim Curry, Criminal Dist. Atty., and David L. Richards, Asst. Criminal Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and HOPKINS and FARRIS, JJ.

## OPINION

HOPKINS, Justice.

This is an appeal from a conviction for the offense of aggravated sexual assault of a child. *See* TEX.PENAL CODE ANN. sec. 22.021 (Vernon Supp.1986). The appellant entered a plea of guilty to a jury and was sentenced to 25 years confinement in the Texas Department of Corrections.

The judgment is affirmed.

Appellant's four points [1] of error are as follows:

1. The trial court committed reversible error in allowing the State to introduce evidence, over the appellant's objection, of sexual offenses committed by appellant with the victim.

2. The State's jury summation asked the jury to speculate about prior sex offenses in determining punishment.

3. The statute providing for a jury instruction regarding parole is unconstitutional.

4. Appellant was denied the effective assistance of counsel.

The constitutionality of a statute will not be determined by an appellate court unless the determination is absolutely necessary to decide the case in which the issue is raised. *See Skinner v. State*, 652 S.W.2d 773, 776 (Tex.Crim.App.1983). We will therefore begin with a consideration of the first point of error.

The State, in presenting its case initially, limited testimony of sexual offenses committed by the appellant to the one incident specified in the indictment and no objection was made by the appellant. On direct examination, appellant testified in answer to a question by his attorney as follows:

Q. Mr. Patton, how do you feel about these events that transpired between you and M⸺ and also J⸺?

A. Well, it's torn me up as much as it has that family because I didn't want it to happen. I mean, it just happened....

Before cross-examination, the prosecutor advised the court that because of the above testimony the State intended to introduce all of the evidence of all of the sexual acts that occurred between the appellant and J⸺ P⸺. The reasons given were: 1) the testimony placed in issue appellant's intent; 2) the testimony had left a misimpression with the jury that the incident was a one-

1. Pursuant to TEX.R.APP.P. 74(d), effective September 1, 1986, we will hereafter refer to these contentions as "points" of error.

time event; and 3) where probation is an issue the events are admissible to aid the jury in arriving at proper punishment.

The trial judge advised the attorneys he was going to allow the State to question the appellant in that regard and advised the appellant's attorney that he could "make your objection and note your exception at that time."

In response to the State's interrogation as to whether appellant considered sex with children to be a vicious and injurious habit, without objection, appellant replied, "[w]ell, I think it's how you look at it. I'm sorry that it happened. I don't know." Again, without objection, the State asked the following questions and received the following answers:

Q. Well, Mr. Patton, yesterday you told us what you would do. I am just following those things and trying to find out some more information.

Q. Would you turn in a pedophile that you found out was having sex with young boys?

A. I would have to think about it.

Q. Did you ever turn in your roommate, Bill Allen, while he was having sex with young boys?

A. I don't know that he was.

Q. Now, Mr. Patton—

A. I never saw that.

Q. You were present some of the times when Mr. Allen had sex with these two boys, weren't you?

A. That is the claim, but I was not.

Q. You were never present when Mr. Allen had sex with these two boys?

A. No, sir.

Q. And all four of you were in there in that bedroom, you were never present during any of that? Had you gone?

A. All four.

Q. You and Mr. Allen and these two boys?

A. I don't recall anything like that, sir.

Q. Now, Mr. Patton, you also made a lot of statements what poor health you were in and that you're kind of a weak man. Do you remember testifying to that yesterday?

A. I didn't say that I was a week [sic] man. I said that I had all of the infirmities of a 72 years old man and I am not ill.

Q. You're healthy enough to have sex with two young boys all at one time, aren't you though?

A. Yes.

Q. And you're healthy enough to have ejaculated in the mouth of J— P—, are you not?

A. That never happen [sic], I don't think.

Q. Isn't it true that you ejaculated in the mouth of J— P— [and] told him, "Don't spit it out; swallow it"?

A. No, sir, it did not.

Q. Isn't it true that occurred at least once?

A. Yes, sir.

Q. You're denying that?

A. Yes, sir. I think if you were to question the boy, you could find that out. Now I have—

Again without objection, appellant testified:

Q. Okay. Now, you testified yesterday that you gave gifts to M— and you gave gifts to his two sisters as well, right?

A. Yes, sir.

Q. Now, you didn't set up any kind of savings accounts for the girls, did you?

A. No, sir.

Q. You just did that for M—?

A. Yes, sir.

Q. You didn't give those girls stereos, did you?

A. I gave them more or less equal things—dollars.

Q. Mr. Patton, would you answer my question. Did you give the girls a stereo like you gave to M—?

A. You're trying to change the meaning—

Q. Mr. Patton, please answer the question that is asked. Did you not understand my question?

A. I did not give them stereos; I gave them dollars.

Q. You gave them dollars and you gave M— a stereo?

A. Yes, sir.

Q. The more sex you got, the more gifts that you gave to M—, isn't that true?

A. That is not true.

Q. All through the fall and winter, the more sex you got—

At this point appellant objected to the question as "bringing in extraneous offenses," and the court sustained the objection as it related to M—. The court overruled appellant's objection to the State's question concerning prior sexual activity between appellant and J— P—, the complaining witness, and the following testimony was elicited:

Q. Mr. Patton, I will ask you again. Did you have sex with J— P— numerous times over a period of two to three months?

A. No sir.

Q. You didn't?

A. I did not.

Q. You're claiming it just happened one time?

A. That is true.

Q. In fact, isn't it true that when J— would come over any time in the afternoon that you would have sex with him?

A. No, sir, it is not.

Q. Isn't it true that you would remove his clothes and you would remove your clothes and you would perform oral sex on him?

A. No, sir.

Q. But you did that on that one time, didn't you?

A. That's correct.

Q. Isn't it true that you would have him perform oral sex on you?

A. Never.

Q. Isn't it true that you had anal sex with M— that day?

A. No, sir it is not.

Q. When M— said that yesterday he was lying, huh?

A. Yes, sir.

Q. So, you deny that part of M—'s testimony?

A. Yes, sir, I do.

Q. And isn't it true that when J— came over a period of time, you built up to the oral sex; that you started out by touching him a little bit and then trying to get his pants off. When he resisted, you backed off and then the next time he came over, you take it a step further until you finally got him back in that bedroom?

A. No, sir.

Q. Isn't it true that you—to prepare him for these acts of sex, you started showing him magazines like *Gay Boy Gazzette* that you had there at your house?

A. No, sir. There were some *Playboys* in the house which a lot of people have.

Q. You didn't have a magazine called *Gay Boy Gazzette* that you showed J—?

A. No, sir, I have never seen one. Didn't know there was one.

Q. Didn't you also when you had both of these boys there together, didn't you try to tell them to do it to each other?

A. No, sir.

Q. Didn't you try to help them do it to each other oral sex?

A. No, sir.

Q. You never did that?

A. No, sir.

In rebuttal the State recalled J— P— to the stand and the following testimony was given without objection:

Q. Okay, J—, I've got to ask you some questions. I will do this as quickly as we can. Now, you testified yesterday about one incident that occurred when that dog came in the bedroom. Do you remember that?

A. Yes.

Q. Is that the only time when you were over at that house when this Defendant had sex with you and forced you to have sex with him?

A. No.

Q. About how many times did it occur?

A. Seven.

Q. Exactly seven?

A. About seven.

Q. Over how long a period of time did this occur?

A. From—from December to February.

At this point appellant's objection to "all of the testimony of J__ P__ concerning any offense" other than that occurring on the date alleged in the indictment was overruled and the court granted appellant "a running objection" to the remainder of J__ P__'s testimony concerning any extraneous offense. The State proceeded to elicit testimony from J__ P__ that controverted each of appellant's denials set out hereinabove.

■ The general rule is well established that specific acts of misconduct by the accused which have not resulted in final convictions are inadmissible. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App. 1972). Evidence of other unrelated extraneous offenses is generally not admissible unless its evidence is both material and relevant to a contested issue and comes within a set of circumstances justifying admission. The rationale for this rule of law is to avoid confusing the jury or trying the defendant for being a criminal generally. *See Cain v. State,* 642 S.W.2d 806, 808 (Tex.Crim.App.1982).

In support of his contention that the trial court erred in admitting evidence as to prior sex acts between appellant and the victim, appellant cites *Turnipseed v. State,* 609 S.W.2d 798 (Tex.Crim.App.1980). However, in *Turnipseed* the appellant was arguing there was insufficient evidence to show the substance delivered was cocaine. The court opined:

> In view of their pleas of guilty before the jury impaneled to assess their punishment, Art. 26.14 V.A.C.C.P., we need not pass upon this contention. It is well established that a plea of guilty to a felony charge before a jury admits the existence of all facts necessary to estab-

lish guilt *and in such cases the introduction of testimony by the State is for the jury's benefit in fixing punishment. Id.* at 800–01 (emphasis added). The *Turnipseed* case did not deal with the matter of extraneous offenses. However, as noted in the language emphasized, the State is permitted to offer certain evidence for the purpose of aiding the jury in determining punishment.

■ The circumstances which justify the admission of evidence of extraneous offenses are as varied as the factual contexts of the cases in which the question of the admissibility of such evidence arises. Each case must be determined on its own merits. *See Albrecht,* 486 S.W.2d at 100. One of the situations in which the State is permitted to present information of extraneous offenses is for the purpose of correcting a false impression left with the jury by evidence presented by an accused. *See Morgan v. State,* 692 S.W.2d 877, 882 n. 7 (Tex.Crim.App.1985); *Baxter v. State,* 645 S.W.2d 812, 816 (Tex.Crim.App.1983). In the instant case the appellant had testified in such a manner as to create the impression that the victim and his family were such close friends he (appellant) would not intentionally or premeditatively do anything to harm them or cause them trauma. His testimony that "it just happened" clearly left the impression that appellant was overcome by some uncontrollable urge on this *one* occasion. The State had the right to interrogate the appellant on this subject to ascertain the truth and full meaning of his testimony. When the appellant then testified that he had engaged in sex with J__ P__ only on the occasion in question and denied all other encounters, the State had the right to impeach his testimony by placing J__ P__ on the stand in rebuttal. *See Baxter,* 645 S.W.2d at 816. Additionally, evidence offered at the hearing on punishment may include legally admissible evidence relevant to the application for probation. *See Davis v. State,* 478 S.W.2d 958, 959 (Tex.Crim.App.1972). In the instant case appellant had made application for probation. Appellant's first point of error is overruled.

In his second point of error appellant complains that the following statements by the State in its closing arguments asked the jury to speculate on prior offenses by appellant and assess punishment based on such offenses:

> Now, his lawyer gets up here and wants you to conclude that, well, this is something that just started when he turned 70 years old. When you go back there in that jury room, you don't leave your common sense out here. And your common sense tells you this isn't something that somebody just starts at the age of 70.

Appellant's counsel objected and asked that the jury be instructed to disregard the statement.

■ The court sustained appellant's objection. No renewed request was made by the appellant for the court to instruct the jury to disregard after the objection was sustained and the court took no action in regard to the prior request. If an objection is sustained, it must be followed with a request for an instruction for the jury to disregard. If such an instruction is given, it must be followed by a motion for a mistrial. Failure to take each of these steps results in failure to preserve error, because counsel obtained all the relief he requested. For error to be preserved for appellate review there must be an adverse ruling by the court. The appellant did not secure an adverse ruling from the court on his request for an instruction. *See Kennedy v. State,* 520 S.W.2d 776, 778 (Tex.Crim. App.1975); *Rodriguez v. State,* 661 S.W.2d 318, 320 (Tex.App.—Corpus Christi 1983, no pet.). Appellant failed to preserve error by not renewing his request for an instruction to disregard and obtaining an adverse ruling thereon by the court.

■ Appellant further complains of the following statement by the prosecutor: "All you do know [sic] that prior to today he has never been before convicted of a felony for sexually abusing children." The appellant made the same objection that the prosecutor was asking the jury to speculate about prior activities. We disagree. The trial court properly overruled this objection. Appellant's second point of error is overruled.

In appellant's fourth point of error he complains of ineffective assistance of counsel.

■ A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, a defendant must show that counsel's performance was deficient; second, a defendant must show that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

■ With regard to a defendant's contention that his counsel was not functioning as the "counsel" guaranteed him by the sixth amendment of the United States Constitution, judicial scrutiny of counsel's performance must be highly deferential. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," and a defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison,* 477 U.S. ——, ——, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.,* 477 U.S. at ——, 106 S.Ct. at 2586–87, 91 L.Ed.2d at 327. *See also Butler v. State,* 716 S.W.2d 48 at TC–86–11–064 (Tex.Crim. App.,1986).

■ Appellant itemized a dozen instances he alleges as examples of ineffective assistance. One instance was for counsel's failure to request court reporting of the voir dire proceedings. Although it is the better practice for defense counsel to have *all* phases of a felony criminal trial reported, there is no requirement that voir

dire be reported and appellant fails to show any harm resulting from counsel's failure to request the court reporter's service or any error committed during voir dire. Two other examples complain of counsel's failure to cross-examine the two young victims. Clearly the election not to cross-examine comes within the realm of trial strategy. Appellant fails to cite any possible results of such cross-examination that might have been helpful in obtaining probation or a minimum sentence for appellant. Other examples listed complain of counsel's failure to object to certain testimony or questions by the State. Most of these dealt with testimony that was admissible under the doctrine of one continuous transaction. *See Hoffert v. State*, 623 S.W.2d 141, 144 (Tex.Crim.App.1981). We have reviewed not only all of the examples listed by appellant but the entire record and find that, gauged by the totality of the representation, appellant was not denied reasonably effective assistance of counsel. Inasmuch as we have determined the acts and omissions complained of did not constitute ineffective assistance of counsel, it is unnecessary for us to consider the second component heretofore mentioned. Appellant's fourth point of error is overruled.

Having found no merit in appellant's first, second and fourth points of error, we must address the issue of the constitutionality of article 37.07, section 4 raised in appellant's third point of error. Appellant contends that TEX.CODE CRIM.PROC. ANN. art. 37.07, sec. 4(a) (Vernon Supp. 1986), providing for jury instructions relative to parole laws is unconstitutional in that instructing the jury, as provided, constitutes usurpation of the executive power. Appellant points out that the power to grant paroles is vested in the Board of Pardons and Paroles by TEX. CONST. art. IV, sec. 11 and cites *Sanders v. State*, 580 S.W.2d 349 (Tex.Crim.App.1978) in support of his contention. It should be noted that *Sanders* was decided prior to the constitutional amendment to article IV, section 11 in 1983 and the enactment of the present law mandating the following jury charge where the accused has been convicted of certain offenses set forth in TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a):

'Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. *Eligibility for parole does not guarantee that parole will be granted.*

'*It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.*

'You may consider the existence of the parole law and good conduct time. However, *you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.*'

*Id.* (emphasis added).

TEX. CONST. art. IV, sec. 11 states:

The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws.

In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Pa-

roles, he shall have the power to remit fines and forfeitures....

*Id.*

It should be noted that we disagree with the rationale and conclusions expressed by our sister Dallas Court of Appeals in the case of *Rose v. State,* —— S.W.2d —— No. 05–85–01136–CR (Tex.App.—Dallas, Aug. 11, 1986) (not yet reported), in which that court held that article 37.07, section 4 is unconstitutional as being "an attempt to allow the judicial branch of government to exercise a power exclusively within the province of the executive branch of government." *Id.,* slip op. at p. 17.

■ In passing upon the constitutionality of a statute, we begin with a presumption of validity. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978).

■ We fail to perceive any "usurpation of executive power" as alleged by appellant or any violation of the above quoted constitutional provisions. The constitution provides that the legislature has the authority to enact parole laws and further provides that the governor's power to grant reprieves and pardons and commute punishment shall be upon the recommendation and advice of the Board of Pardons and Paroles. There is nothing in art. 37.07, sec. 4(a) that usurps or changes the power granted the governor by the constitution. The statute in question does not attempt to grant to a jury or the judicial branch of the government any power or authority reserved by the constitution to the legislature or governor in matters of parole. The statute merely mandates that the jury shall be advised of certain parole laws promulgated by the legislature. The statute requires that the jury be further advised that no accurate prediction can be made as to how the parole laws will affect the particular defendant in a case. The mandated instruction also states that the jury, even though it can consider the existence of the parole law and that good conduct credit *might* be applied, may not consider how same may be applied or affect the particular defendant for which they are asked to affix punishment. Such instruction in no

manner or means allows the jury to grant or deny parole to any defendants nor delay or interfere with the consideration of parole by the executive branch of government. Likewise the statute does not grant to the judiciary authority or power over the subject of parole.

■ A review of the legislative history of article 37.07, section 4 leads to the conclusion that its enactment was for the purpose of preventing jurors from drawing on their imagination as to how good conduct time and the parole laws affect a particular defendant. Further, it was anticipated by the legislature that an instruction combining an explanation of the matter with a specific instruction not to consider how the matter *might be applied* to a particular defendant would serve the public interest as well as serve the interests of those convicted of crimes. The bill analysis to the statute follows:

*Background Information:*

There has been an outcry from public citizens serving as jurors that the sentences that have been handed down have differed greatly from the sentences actually served. Jurors have indicated in some instances that they were recommending even longer sentences in order to compensate for the time which would be knocked off the sentence by the combination of good time credit and eligibility for parole.

*Problem(s) that the Bill Addresses:*

Public citizens serving as jurors from across the state have indicated a need to be informed that the defendant may, but will not necessarily, be incarcerated for the full length of the sentence imposed; and the guidelines that are used to reduce the sentences through parole and good time credit.

HOUSE COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex.S.B. 37, 69th Leg. (1985).

■ There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made

manifest by experience. *See Texas Nat. Guard Armory Board v. McGraw,* 132 Tex. 613, 126 S.W.2d 627, 634 (1939). The wisdom or expediency of the law is the legislature's prerogative, not the court's. *See Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968).

To conclude that jurors will fail to comprehend the court's explanation that eligibility for parole does not guarantee parole and that no accurate prediction can be made as to how good conduct time or parole *may* be applied to a particular defendant is an assumption we are unwilling to make. Further, to conclude that jurors are likely to disregard the court's instruction not to consider the award or forfeiture of good conduct time nor how "the parole law *may be* applied to this particular defendant," would, in our opinion, be an indictment against the integrity of individual jurors and the jury system itself. We refuse to become a party to any such indictment.

Should it be shown that a juror disregarded the court's instructions and such disregard resulted in harm to a particular defendant, such showing would likely constitute jury misconduct calling for a new trial. No such showing was made nor contended in the instant case. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.