Edward Wayne SANDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–86–006–CR.

Court of Appeals of Texas,
Texarkana.

March 4, 1987.

Discretionary Review Granted
July 1, 1987.

See also 727 S.W.2d 670.

Gary L. Waite, Paris, for appellant.

Tom Wells, Dist. Atty., Paris, for appellee.

CORNELIUS, Chief Justice.

Edward Wayne Sanders appeals his conviction for aggravated sexual assault of a child. He complains of a jury instruction on the parole law and a portion of the jury charge regarding the date of the offense. He also urges that he is entitled to a new trial because the State used its peremptory jury challenges to purposefully eliminate black persons from the jury. We find these contentions to be without merit and affirm the conviction.

Pursuant to Tex.Code Crim.Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.1987), the jury was instructed as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behaviour, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Sanders argues that it was fundamental error to give the instruction because the statute requiring it violates the due process and separation of powers doctrines of the United States and Texas Constitutions, and because the instruction is misleading and is not authorized by the statute. We disagree. Identical contentions have been raised and rejected in our sister courts, and we adopt the reasoning and holdings of those courts in approving the instruction. *See Rose v. State*, 724 S.W.2d 832 (Tex. App.–Dallas 1986); *Joslin v. State*, 722 S.W.2d 725 (Tex.App.–Dallas, 1986); *Zaragosa v. State*, 721 S.W.2d 429 (Tex.App.– Corpus Christi, 1986); *Clark v. State*, 721 S.W.2d 424 (Tex.App.–Houston [1st Dist.], 1986); *Patton v. State*, 717 S.W.2d 772 (Tex.App.–Fort Worth, 1986).

Sanders next complains about a portion of the jury charge which told the jury they could find Sanders guilty if he committed the offense on or about September 5, 1985. "On or about" was defined in the charge as "any date within the 5 years immediately preceeding (sic) the return of the indictment in this case...." According to Sanders, the charge permits the jury to find him guilty of a first degree felony at a time (i.e., prior to September 1, 1981) when the act complained of constituted a second degree felony, and consequently constitutes an ex post facto application of the law.

His argument is based on the 1981 amendment to Tex.Penal Code Ann. § 21.03, which raised the penalty for the offense of aggravated rape from a second to a first degree felony. Act of April 30, 1981, Ch. 96, § 1, 1981, Tex.Gen.Laws 203 and Act of May 25, 1981, Ch. 202, § 1, 1981, Tex.Gen. Laws 471, *repealed by* Act of May 27, 1983, Ch. 977, § 3, 1983, Tex.Gen.Laws 5315. (The offense of aggravated rape is now known as aggravated sexual assault.) Tex.Penal Code Ann. § 22.021 (Vernon Supp.1987).

 It was undisputed that the act alleged against Sanders was committed on or very near to September 5, 1985. In fact, the victim did not even attend the day care center where the offense occurred until a time near to that date. Under the circumstances, any error in the definition of the phrase "on or about" did not prejudice Sanders and was harmless beyond a reasonable doubt. *Arline v. State*, 721 S.W.2d 348 (Tex.Crim.App., 1986); *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985).

The final issue to be decided is an equal protection claim arising from the State's use of peremptory challenges. Sanders contends that the prosecutor's peremptory strikes were purposefully used to rid the jury panel of black persons remaining in the pool of potential jurors in violation of both the United States and Texas Constitutions.

Sanders bases his claim on the United States Supreme Court decision in *Batson v. Kentucky,* 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* held that the equal protection clause of the United States Constitution forbids the State from peremptorily challenging potential jurors solely on account of their race or on the assumption that black jurors as a group will not be able to impartially consider a charge against a black defendant, and that a prima facie case of racial discrimination may be established by showing the State's use of peremptory challenges at the defendant's trial without the necessity of showing repeated instances of such discrimination in a number of cases. Once a

defendant makes that showing, the burden shifts to the State to establish a neutral explanation for challenging the jurors in the particular case on trial. *Batson v. Kentucky,* supra.

A prima facie case of purposeful discrimination may be made by the defendant's showing that he is a member of a cognizable racial group, that the prosecutor used peremptory challenges to remove members of that race from the venire, and that those facts and the other relevant circumstances raise an inference that the State used the peremptory challenges to exclude the potential jurors on account of their race.

 The procedure mandated by *Batson* for a defendant to show a prima facie case of discrimination and for the State to rebut it, presupposes that the defendant will raise his claim of discrimination in the trial court. Sanders did not object in the trial court to the State's use of its peremptory challenges, or in any other way bring any complaint as to discriminatory practices to the attention of the trial court. He therefore failed to show the requisite prima facie case. Moreover, the record on appeal does not establish a purposeful use of the State's peremptory challenges to exclude black persons from the jury on account of their race. The jury pool contained eleven black persons. Seven were excused for cause and two were so far down the list that they could not be reached in any event. The remaining two were removed by the State's peremptory challenges. There is no evidence of a pattern of strikes against black jurors in the particular area, and there is no indication in the prosecutor's questions and statements on voir dire that he was using the strikes to effect racial discrimination. In fact, the record reveals that the two black persons peremptorily removed by the prosecutor were acquainted with one of the defense character witnesses. This suggests a race neutral explanation for the prosecutor's actions.

The judgment is affirmed.