**Donald Lee BLACKWELL, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–86–065–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 8, 1987.
Discretionary Review Granted
Jan 6, 1988.

Office of the Public Defender, and Charlotte A. Harris, and Thomas W. Schueller Wichita Falls, for appellant.

Barry L. Macha, Cr. Dist. Atty., and Rick L. Mahler, Asst. Dist. Atty., Wichita County, for state.

Before BURDOCK, FARRIS and KELTNER, JJ.

## OPINION ON MOTION FOR REHEARING

KELTNER, Justice.

This is an appeal from Donald Lee Blackwell's conviction for the offense of aggravated robbery pursuant to TEX. PENAL CODE ANN. sec. 29.03(a) (Vernon 1974). The jury assessed punishment at 25 years confinement in the Texas Department of Corrections.

Blackwell filed a motion for rehearing after the original opinion and judgment was issued in this case. In that motion for rehearing, Blackwell correctly states that our original opinion misstates the facts in one area. As a result, we withdraw our opinion of August 20, 1987, and substitute this in its place.

We affirm.

In March, 1985, at approximately 5:00 a.m., Blackwell knocked on the motel room door of William Thom, who was a registered guest at the Town & Country Motel in Wichita Falls, Texas. Blackwell falsely identified himself as the motel security guard and asked Thom if he owned a specific pickup in the parking lot. Thom acknowledged that he owned the pickup and Blackwell told him that someone had broken into the truck. Blackwell then asked that Thom accompany him to the pickup to make sure that nothing was missing. Thom agreed and went back into the room to put on his clothes. However, Thom had taken the precaution to place a .25 caliber pistol in his pocket. He also carried approximately $300.00 in cash in his pants pocket.

When they arrived at the pickup, Thom noticed that a vent window, which had previously been patched with duct tape, had been pushed open. Also, the glove box

inside the truck was open. However, a search of the truck revealed that nothing of importance was missing. Nonetheless, Blackwell insisted that Thom make a thorough check of the vehicle so that a full report could be made. As a result, Thom checked behind the seat of the pickup and proceeded to search the toolbox behind the cab.

While Thom was looking through the toolbox, he uncovered a rubber boot, which contained a .22 caliber revolver. Thom testified that Blackwell grabbed the revolver, placed it against Thom's ribs and demanded his billfold and money. Thom acceded to the request. Blackwell then ran across the parking lot.

Thom testified that he took the .25 caliber pistol from his pocket and yelled for Blackwell to stop. Instead of stopping, Blackwell turned and fired a shot at Thom. Thom returned the fire, striking Blackwell in the head and abdomen. The police were called to the scene and Blackwell was taken to a local hospital.

Blackwell appeals and brings four points of error. The sufficiency of the evidence is not challenged.

In Blackwell's first point of error, he contends that the trial court erred in failing to dismiss the indictment pursuant to the Speedy Trial Act. Specifically, Blackwell claims the State failed to secure his presence within 120 days of the commencement of the criminal action. We disagree. Recently, our Court of Criminal Appeals held that the Speedy Trial Act is unconstitutional because it violates the separation of powers doctrine of the Texas Constitution. *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim. App.1987) (reh'g pending). Therefore, the first point of error is overruled.

In his second point of error, Blackwell contends the court erred in failing to dismiss the indictment because he was denied a speedy trial in violation of the sixth and fourteenth amendments.

Both Blackwell and the State agree that the controlling case in this issue is *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the Su-

preme Court adopted a balancing test to determine whether a defendant's sixth amendment right to a speedy trial had been violated. The four factors to be considered when this contention is raised are: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.; Phipps v. State*, 630 S.W.2d 942, 946 (Tex.Crim.App.1982). We will discuss each factor separately.

## LENGTH OF THE DELAY

A lengthy delay is the triggering mechanism of a speedy trial claim. Without a delay, there is no necessity to inquire into the other factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. No precise length of delay automatically constitutes a violation of the right to a speedy trial. Instead, each case is examined on an ad hoc basis. *Phipps*, 630 S.W.2d at 946. In the instant case, there was approximately a one year delay. Blackwell was arrested April 16, 1985. He was not tried until March 25, 1986. The law is well settled that a delay is not a per se deprivation of the defendant's right to a speedy trial, but it is a factor requiring consideration of the defendant's claim. *McCarty v. State*, 498 S.W.2d 212, 215 (Tex.Crim.App.1973).

## REASON FOR DELAY

In considering the reason for the delay, the United States Supreme Court has held that different weight should be assigned to different reasons for the delay. For example, deliberate attempts to hamper the defense weigh heavily in favor of violation of the sixth amendment right to a speedy trial. On the other hand, circumstances such as missing witnesses will justify delays. However, in most instances, the delay will be caused by more neutral reasons such as overcrowded court dockets, which are weighed less heavily against the State. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

In the instant case, there are many reasons for the delay. Blackwell remained in custody of the Texas Department of Corrections Diagnostic Unit until October 24, 1985. However, on numerous occasions during that period of time, he was transferred to John Sealy Hospital in Galveston for additional medical treatment.

The Wichita County Sheriff's Department placed a felony detainer on Blackwell on July 23, 1985. He was returned to Wichita County on October 25, 1985, pursuant to a bench warrant. The prosecutor testified that he was informed by the Parole Board in late October that Blackwell was medically ready to stand trial. The prosecutor further testified that he immediately took steps to have Blackwell returned to Wichita County.

The trial court placed Blackwell's case on the docket in October, 1985. Blackwell's counsel did not appear for pre-trial hearings set in November or December. Additionally, Blackwell's counsel announced not ready every month until January 1986. In February, 1986, Blackwell's attorney withdrew his representation and a public defender was appointed. Blackwell's case was tried in March, 1986.

## ASSERTION OF THE RIGHT

In *Barker v. Wingo,* the Supreme Court held that a defendant's assertion of the Speedy Trial Act is entitled to strong evidentiary weight when determining whether the defendant was deprived of his right. However, the defendant's delays in raising the speedy trial objection can effectively waive the right. *See Barker,* 407 U.S. at 531-32, 92 S.Ct. at 2192-93, 33 L.Ed.2d at 117-18. Our Court of Criminal Appeals has held that the failure to assert the right "dims the claim of harm." *Turner v. State,* 504 S.W.2d 843, 845 (Tex.Crim.App. 1974).

In the instant case, Blackwell took no action to assert his right to a speedy trial, but, simply moved to dismiss the indictment for lack of a speedy trial. The record reflects that Blackwell claims that he was unaware of the charges against him until September, 1985. However, he was represented by counsel as early as July, 1985. Blackwell's counsel testified that he could not remember the exact dates of his engagement or of his correspondence with Blackwell. (Blackwell claims that he wrote four or five letters to his counsel which were unanswered. His counsel also stated that at times he was uncertain as to Blackwell's exact location in the penitentiary system. However, Blackwell's counsel testified he did receive one letter from Blackwell during this period of time.) From the evidence, we must conclude that the fault of the failure of this case to be brought to trial does not fall on the State. Blackwell did not assert his right to a speedy trial to anyone involved in the prosecution of his case. His own counsel testified that he was never ready for trial at any point during his representation of Blackwell.

Additionally, the State takes the position that it should not be penalized for the period of time that Blackwell would have been in prison for the parole revocation charges against him. Specifically, the State points out that Blackwell waived his right to a parole revocation hearing within ninety days of his receiving the warrant on that charge. Instead, Blackwell opted to have the parole revocation hearing after his trial in the instant case. As a result, he was transferred to the Texas Department of Corrections infirmary where he could obtain better medical care. During this period of time, he was under a warrant and held without bond for violation of his parole. Under the Texas Speedy Trial Act, this time would have been excludable from that Act's timetable. We decline to issue an opinion as to the validity of the State's argument on this point.

Nonetheless, this combination of factors leads us to conclude that fault for any delay in bringing Blackwell to trial must rest with Blackwell and his counsel.

## PREJUDICE TO THE DEFENDANT

The defendant has the burden of showing prejudice. *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). A mere passage of time is not prejudicial and will not result in a denial of speedy trial.

*United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *see also Grayless v. State,* 567 S.W.2d 216 (Tex. Crim.App.1978) (two years and nine months); *Easley v. State,* 564 S.W.2d 742 (Tex.Crim.App.1978) (five years); *Swisher v. State,* 544 S.W.2d 379 (Tex.Crim.App. 1976) (three years and eight months); *Smith v. State,* 530 S.W.2d 827 (Tex.Crim. App.1975) (two years and four months); *Harris v. State,* 489 S.W.2d 303 (Tex.Crim. App.1973) (fifteen months).

There are three interests to be considered when determining prejudice to the defendant. These are: (1) prevention of oppressive pre-trial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the delay will impair the ability of the accused to defend himself. *See Phipps,* 630 S.W.2d at 946.

Blackwell contends that the failure of the State to put him on notice of charges against him until September, 1985, impaired his defense because of the passage of time. However, we must note that Blackwell testified at the pre-trial hearing that he had no memory of the events of the offense because of his brain damage. Additionally, Blackwell was incarcerated for violation of his parole from October 25, 1985 until March 25, 1986.

As a result, there is no showing of prejudice to Blackwell's defense.

■ We have considered each of the four factors discussed by the United States Supreme Court in determining violation of sixth amendment rights for failure to grant a speedy trial. We find there was no violation of Blackwell's sixth and fourteenth amendment rights to a speedy trial. Accordingly, the second point of error is overruled.

In his third point of error, Blackwell contends that the trial court erred in instructing the jury on the law of parole. He asserts that section 4 of article 37.07 of the Texas Code of Criminal Procedure, which authorizes and directs such instructions, is unconstitutional because it violates the separation of powers doctrine. He also claims that the statutory provision permitting the jury to consider the existence of the parole law, but prohibiting the consideration of the manner in which the parole law may be applied to the defendant on trial, contains fatally irreconcilable conflict.

■ We disagree. This court has had occasion to consider identical attacks upon the constitutionality of the statute and has failed to find such infirmity. *See Patton v. State,* 717 S.W.2d 772, 780 (Tex.App.—Fort Worth 1986, pet. pending). In *accord, see Shaw v. State,* 729 S.W.2d 134, 135 (Tex. App.—Fort Worth 1987, pet. pending); *Spelling v. State,* 719 S.W.2d 404, 409–10 (Tex.App.—Fort Worth 1986, pet. granted). In *Patton,* this court reasoned:

> To conclude that jurors will fail to comprehend the court's explanation that eligibility for parole does not guarantee parole and that no accurate prediction can be made as to how good conduct time or parole *may* be applied to a particular defendant is an assumption we are unwilling to make. Further, to conclude that jurors are likely to disregard the court's instruction not to consider the award or forfeiture of good conduct time nor how "the parole law *may be* applied to this particular defendant," would, in our opinion, be an indictment against the integrity of individual jurors and the jury system itself. We refuse to become a party to any such indictment.

*Patton,* 717 S.W.2d at 781 (emphasis in original).

However, Blackwell relies on the Dallas Court of Appeals' opinion in *Rose v. State,* No. 05–85–01136–CR (Tex.App.—Dallas, August 11, 1986) (opinion withdrawn). Blackwell contends that the instructions authorized by article 37.07 permit the jurors to calculate a sentence that thwarts the parole laws. He also contends that such instructions are misleading in regards to the distinction between existence of parole laws and their application to the defendant. However, Blackwell's reliance on *Rose,* is misplaced. The Dallas Court, after an en banc consideration of that case, held article 37.07, section 4(a) to be constitutional as against claims of violation of separa-

tion of powers doctrine and violations of due process clauses of the United States and Texas Constitutions. *See Rose v. State,* 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. pending) (dissenting and concurring opinion on motion for reh'g). In so holding, the Dallas Court cited the above quoted language from our opinion in *Patton,* with approval.

Accordingly, the third point of error is overruled.

In his fourth point of error, Blackwell contends that the trial court erred in failing to grant his motion for new trial because the jury considered the manner in which the parole law might be applied to him.

■ In determining jury misconduct, the five-prong test adopted by our Court of Criminal Appeals prior to the enactment of section 4 is still the proper test. *Benitez v. State,* 733 S.W.2d 395 (Tex.App.—Fort Worth, 1987) (not yet reported). To constitute reversible error, the defendant must prove that the jury's discussions during deliberations contained:

(1) a misstatement of the law;
(2) asserted as a fact;
(3) by one professing to know the law;
(4) which is relied upon by other jurors;
(5) who for that reason changed their vote to a harsher punishment.

*Sneed v. State,* 670 S.W.2d 262, 268 (Tex. Crim.App.1984) (opinion on reh'g).

The record before us reflects testimony of a number of jurors. This testimony is conflicting. For example, juror Fulton testified the jurors raised questions concerning parole. However, he testified that he responded that any sentence levied on Blackwell would require Blackwell serving at least one-third of the time. Juror Chadwick testified that the jury engaged in a discussion to the effect that Blackwell would have to serve one-third of any sentence assessed. However, Chadwick was insistent that the jury did not try to predict how the parole law would be applied against Blackwell.

On the other hand, juror Newman testified that she considered the parole law in arriving at Blackwell's sentence. Newman testified further that other jurors discussed how long it would take for Blackwell to be released.

The law is well settled that issues of fact as to jury misconduct are for the determination of the trial judge. *Id.* Where, as here, the evidence is conflicting, the trial court's decision regarding motion for new trial will not be reversed unless the trial court's action resulted in abuse of discretion. *Id.*

■ In applying the five-prong test to the instant case, the record does not reflect any misstatement of law. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 15(a) (Vernon 1979). Additionally, there was no misstatement of law by anyone professing to know the law. *Kopanski v. State,* 713 S.W.2d 188, 191 (Tex.App.—Corpus Christi 1986, no pet.); *Rassner v. State,* 705 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). As a result, the first three prongs of the five-prong test are missing. Therefore, no reversible error is shown.

Finding no reversible error in any of the points raised by Blackwell, we affirm the judgment of the trial court.