COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

WILLIAM TIMOTHY STROUD,                        )

                                                                              )              
No.  08-00-00520-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
385th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Midland County, Texas

Appellee.                           )

                                                                              )                 
(TC# CR-25,773)

                                                                              )

 

 

O
P I N I O N

 

William Timothy
Stroud was charged with intentional murder, by a firearm, of Robert Keith
Osburn.  Appellant pled not guilty to the
intentional murder charge, and claimed that he was acting in self-defense.  The jury issued a guilty verdict on the
offense of murder.  The charge was
enhanced after the jury found Appellant guilty of two previous felony
offenses.  The jury assessed punishment
at 99 years.  Appellant filed a motion
for new trial contesting that there was factually insufficient evidence to
convict him of murder, and asserts that the shooting was in  self-defense. 
He also asserts that the parole instruction given to the jury was
unconstitutional.  We affirm.

FACTUAL SUMMARY








Appellant has been
convicted and served prison sentences for numerous crimes since the age of
twenty-one.  At the time of the instant
offense, a blue warrant had been issued for Appellant=s
arrest.

In November 1999,
Appellant was living in the trailer home of Sam and Vivian Allen and their
three children.  Aware that there was a
warrant for his arrest and afraid that they would find him, he began carrying a
shotgun around the house most of the time. 
Tensions began to grow between the Appellant and the Allens and he told
Vivian Allen that if she or her husband ever called the police that he would
kill the children.

On Christmas day
1999, Vivian and Appellant had an argument and she left the trailer with her
children and went to her grandmother=s
home where she was joined by her husband. 
Allen told his wife that she could not return to the trailer, because he
thought Appellant was angry with her and would kill her.  Later that night, the Allen family went to
the home of Robert and Kimberly Osburn. 
Kimberly Osburn said that the Allens arrived at their house and there
was Aa certain
amount of tension or nervousness in the air . . . .@  Sam Allen, Robert Osburn, and Lawrence Newton
left the Osburn=s home
still later that night to go to the store. 
They were stopped by police looking for the Appellant.  The three men then drove to the Allens= trailer to warn Appellant that the
police knew where he was and that they were on their way.








At about the same
time as Allen, Osburn, and Newton drove up to the trailer, Toby Allen, Sam
Allen=s nephew,
came over from a nearby trailer. 
Appellant claimed that he became concerned when he saw that Osburn had a
knife.  Sam Allen and Osburn told
Appellant that the police had stopped them on the way to the store and that
they were looking for Appellant.  Osburn,
Toby, and the Appellant went inside the trailer.  Sam left the trailer a short time later.  Osburn and Appellant continued to discuss
what had happened.  Toby Allen watched
television as Appellant and Osburn were sitting on opposite couches discussing
what had happened with the police. 
Appellant began arguing with Osburn. 
Appellant testified that Osburn was moving closer and closer during the
argument.  Toby said that he really did
not remember what Osburn was doing since he was distracted by the television,
but that he remembered at some point, Appellant grabbed the shotgun that he
kept behind the couch and placed it in his lap. 
Toby said that both men were sitting when Osburn said, A[i]f you are going to shoot me, shoot
me.@ 
Toby said that he did not see Osburn making any sudden movements towards
Appellant.  Toby just remembered the
gunshot.  Appellant fired one shot
directly at Osburn=s head,
killing him instantly.

Midland County
Sheriff deputies found Robert Osburn dead on the couch, with a large gunshot
wound to the left front side of his head. 
He had a hunting knife tucked inside his right shirt sleeve with the tip
of the blade sticking out of his sleeve. 
Toby said that Osburn had told him that he had a knife.  But Toby said that he did not see Osburn
reveal the knife at any time during his conversation with Appellant.

Appellant was
found hiding under a nearby trailer. 
Appellant later revealed where he had hidden the rifle.  A shell was discovered outside the trailer
where Osburn was shot and an expended shell was found in the chamber of the
shotgun.

Factual Sufficiency








When conducting a
review of the factual sufficiency of the evidence, we consider all of the
evidence impartially; and we will set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Clewis v. State, 922
S.W.2d 126, 129-30 (Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d
290, 295 (Tex.App.‑-El Paso 1997, no pet.).  A defendant challenging the factual
sufficiency of the evidence may allege that the evidence is so weak as to be
clearly wrong and manifestly unjust, or in a case where the defendant has
offered contrary evidence, he may argue that the finding of guilt is against
the great weight and preponderance of the evidence.  See Johnson v. State, 23 S.W.3d 1, 11
(Tex.Crim.App. 2000).  Although we are
authorized to set aside the fact finder=s
determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23 S.W.3d at 7.  We are not free to reweigh the evidence and
set aside a verdict merely because we feel that a different result is more
reasonable.  Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997); Clewis, 922 S.W.2d at 135.








In arguing that
the evidence did not establish that Appellant shot Osburn in self-defense,
Appellant points to the knife found in Osburn=s
shirt sleeve and the heated argument in which they were engaged immediately
preceding the shooting.  Appellant does
not contest the fact that he fired the gun that killed Osburn.  Appellant claims that he fired the gun only
as a means of self-defense once Osburn appeared to be advancing closer to where
he was sitting on the couch.  However,
there is no evidence Osburn took the knife into the trailer intending to attack
Appellant, nor was there any evidence that Osburn became aggressive or
attempted to physically confront Appellant. 
Rather, the testimony by Toby Allen and photographs taken of the crime
scene show that Osburn was sitting on the couch when he was shot by
Appellant.  Even Appellant testified that
Osburn was Adown on
the butt end of that chair.@  When asked why he reacted as he did,
Appellant testified that he learned in prison that the first to react usually
gains the advantage in a situation and stated, A[y]ou
let one man get a bigger move on you, you are subject to die.  If there is combat going on, you are subject
to be the loser of it if you let a man get a little bit too much on you.@ 









To be an act of
self-defense, the Appellant would have to prove that Osburn was attempting to
attack him or that he thought he was in imminent danger.  The penal code permits a person to use force
against another when and to the degree that he reasonably believes that the
force is immediately necessary to protect himself against the other=s use of unlawful force.  See Tex.Pen.Code
Ann. '
9.31(a)(Vernon Supp. 2003).  The person
is not justified in using force in response to verbal provocation alone or if
the person provoked the other=s
use of force (unless the initiator abandons the encounter).  Tex.Pen.Code
Ann. '
9.31(b).  A person is justified in using
deadly force to protect himself if he is justified in using force and if a
reasonable person in his position would not have retreated, and when and to the
degree he reasonably believes the deadly force is immediately necessary to
protect himself against the other=s
use or attempted use of unlawful deadly force.  See Tex.Pen.Code
Ann. '
9.32.  To raise self‑defense as an
issue, a defendant must put on some evidence of aggression on the part of the
deceased.  Thompson v. State, 659
S.W.2d 649, 653 (Tex.Crim.App. 1983)(en banc). 
Where the evidence of aggression is ambiguous, previous specific acts of
violence committed by the deceased are admissible Ain
so far as they tend to explain the deceased=s
conduct.@  [Emphasis in orignial].  Id. at 654.  In resolving whether the evidence supports
the jury=s
rejection of the self‑defense claim, we look not to whether evidence
refuted Appellant=s self‑defense
testimony, but whether, after viewing all the evidence most favorably to the
prosecution, any rational trier of fact could have found the elements of murder
beyond a reasonable doubt and found against Appellant on the self‑defense
issue beyond a reasonable doubt.  See
Saxton v. State, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991).  Reviewing the record in its entirety, the
jury=s verdict
is clearly not so contrary to the overwhelming weight of the evidence as to be
wrong and unjust.  We overrule the first
issue.

Parole
Instruction

In 1989, Article
IV, section 11(a) of the Texas Constitution was amended to provide: 

The Legislature shall by law establish
a Board of Pardons and Paroles and shall require it to keep record of its
actions and the reasons for its actions. 
The Legislature shall have authority to enact parole laws and laws that
require or permit courts to inform juries about the effect of good conduct time
and eligibility for parole or mandatory supervision on the period of
incarceration served by a defendant convicted of a criminal offense.  [Emphasis added].

 

See Luquis v. State, 72
S.W.2d 355, 361 (Tex.Crim.App. 2002); Rose v. State, 752 S.W.2d 529, 535
(Tex.Crim.App. 1987).  This amendment
explicitly authorized the Texas Legislature to enact statutory language to
fulfill its mandate, and the Legislature re‑enacted Article 37.07,
section 4(a) in 1989.  Tex.Code Crim.Proc.Ann. art. 37.07, ' (4)(a)(Vernon Supp. 2003).  The Criminal Court of Appeals determined that
the re‑enacted statute did not violate a defendant=s
due course of law rights under the Texas Constitution, while in other cases, it
also determined that Article 37.07, section 4(a)=s
parole instruction did not violate the federal constitution=s due process clause.  Luquis, 72 S.W.2d at 361.

Parole
Instruction under Texas Constitution 








At the punishment
phase of Appellant=s trial,
his counsel objected to the court instructing the jury on the operation and
effect of parole laws.  Appellant asked
the court not to read the parole instruction included in Article 37.07, due to
the fact that Appellant was ineligible to earn good time credit.  The Appellant argued that Luquis and Jimenez
are an indication that there should be, Ano
instruction concerning parole, parole eligibility or any of those matters in
there, and that that instruction, 37.07 or any part of it, still violates
Article 1, Section 19, of the Texas Constitution , and the due process clause
as applicable to the State=s
14th Amendment.@  Luquis v. State, 997 S.W.2d 442
(Tex.App.--Beaumont 1999), aff=d
by, 72 S.W.3d 355 (Tex.Crim.App. 2002); Jimenez v. State, 992 S.W.2d
633 (Tex.App.--Houston [1st Dist.] 1999), aff=d
by, 32 S.W.3d 233 (Tex.Crim.App. 2000). 
The trial court in this case interpreted the Luquis and Jimenez
cases to be primarily concerned with the good conduct time part of the
instruction.  The trial court deleted the
good conduct time part of the jury instruction, pursuant to the defendant=s request, in accordance with
probability that the Court of Criminal Appeals would make some changes in the
required instruction.  The court then
read an altered version of Article 37.07 parole instruction in its punishment
charge to the jury.








In Muhammad,
the Court overruled appellant=s
objections and instructed the jury pursuant to Article 37.07, section 4(a),
Texas Code of Criminal Procedure.  Muhammad
v. State, 830 S.W.2d 953, 954 (Tex.Crim.App. 1992).  As in Muhammad, here the Appellant
contends that the parole instruction as sanctioned by Article 37.07, section
4(a), violates the due course of law provisions in Article I, section 19 of the
Texas Constitution, in spite of the constitutional amendment of Article IV,
section 11(a).  In Oakley v. State,
830 S.W.2d 107 (Tex.Crim.App. 1992), the Court determined that Article 37.07,
section 4 was properly re‑enacted by the Legislature pursuant to a grant
of authority in the 1989 amendment to Article IV, section 11(a) of the Texas
Constitution.  The Court further held
that Article IV, section 11(a), as amended, was not superseded by the due
course of law provisions in Article I, sections 13 and 19.  Accordingly, the Court affirmed the decision
by the Court of Appeals that the trial court properly instructed the jury in
appellant=s case on
the effect and operation of the parole law, pursuant to Article 37.07, section
4(a), as amended.  Oakley, 830
S.W.2d at 111-12; Muhammad, 830 S.W.2d at 955. 

Here, the
Appellant argues that the answers given by the court to the questions submitted
by the jury failed to answer the proper parole instruction and did not
accomplish its function in regards to indicate that parole exists, and thus
violated Article 1, section 19 of the Texas Constitution.  The first question submitted by the jury was,
AWhat is the difference in 99 years and
life?@  The court explained, ALife
means the natural life of the 
Defendant.  99 years means 99
years, while the Defendant is alive.@  The second proposed question was, AIs life sentence no parole?@ 
The court instructed the jury in the jury charge that:

It is also possible that the length of
time for which the Defendant will be imprisoned might be reduced by the award
of parole. 

 

Under the law applicable in this case,
if the Defendant is sentenced to a term of imprisonment, the Defendant will not
become eligible for parole until the actual time served equals one-half of the
sentence imposed or thirty years, whichever is less.   Eligibility for parole does not guarantee
that parole will be granted.

 

It cannot accurately be predicted how
the parole law might be applied to this Defendant if the Defendant is sentenced
to a term of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities. 

 

You may consider the existence of the
parole law.  You are not to consider the
manner in which the parole law may be applied to this particular Defendant.

 








First, we start
with the normal presumption that the statute is constitutional and does not
violate a defendant=s due
process rights.[1]  Appellant must shoulder the burden to
establish that the jury instruction required under Article 37.07, section 4(a)
is unconstitutional.  Ex parte
Granviel, 561 S.W.2d 503, 511 (Tex.Crim.App. 1978).  The United States Supreme Court has directed
that when reviewing a challenged jury instruction, A>the only question . . . is whether
the ailing instruction by itself so infected the entire trial that the resulting
conviction violates due process.=@ 
Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d
385 (1991); Luquis, 72 S.W.3d at 366. 
That Court has also held that A>the instruction may not be judged in
artificial isolation, but must be considered in the context of the instructions
as a whole and the trial record.=@ 
Id.  We also address
whether there is a Areasonable
likelihood@ that the
jury applied the challenged instruction in a Away
that violates the Constitution.@  Id.

Here, Appellant
makes no claim that this sentence is in any way misleading or erroneous.   There is no indication from the record that
the jury ignored the trial court=s
instruction and thereafter considered parole. 
Appellant has failed to establish that his due process rights were
violated under Article 1, section 19, of the Texas Constitution, and the due
process clause as applicable to the State=s
14th Amendment, by the trial court=s
instruction to the jury on parole, as statutorily required.  We overrule his first argument in the second
issue on appeal. 

Parole
Instruction under Due Process Clause








Appellant next
contends that even if the parole instruction does not violate the Texas
Constitution, it certainly violates the due process clause of the Fourteenth
Amendment to the United States Constitution. 
Specifically, Appellant argues that the instruction is evidence offered
by the trial court of how long the accused will serve and that such instruction
denies the accused the opportunity to rebut or challenge evidence.  Appellant further implies that the instruction
gives the jury information that is subject to whim or change.  We disagree with Appellant=s arguments.[2]


Finding error in
the charge is our first inquiry.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh=g). 
We find the jury charge was not erroneous.  The jury charge did not violate Appellant=s rights to due process of law under
the United States Constitution and due course of law under the Texas
Constitution.  See Edwards v. State,
10 S.W.3d 699, 705 (Tex.App.--Houston [14th Dist.] 1999), pet. dism=d by, 67 S.W.3d 228 (Tex.Crim.App.
2002).








Although it is
theoretically possible that the jury could have been affirmatively misled in
some unspecified way by the totality of the parole law instruction, Appellant
has not demonstrated a reasonable likelihood that it was, in fact, misled,
confused, or considered application of the parole law to Appellant in assessing
punishment or that it assessed a higher sentence based upon any misconstruction
of the parole law charge.  Luquis,
72 S.W.3d at 368.  Indeed, if the jury
followed the judge=s clear
and explicit direction to not apply the general concepts of parole or Agood conduct time@ in assessing Appellant=s sentence, there was no error,
confusion, or harm.  Luquis, 72
S.W.2d at 368.  There is no showing that
the jury did not follow the instruction in this case.  Thus, Appellant has failed to shoulder his
burden to demonstrate that there is a reasonable likelihood that this jury
unconstitutionally misapplied the jury charge as to assess a higher sentence as
a result of the instruction, thereby denying appellant due process or due
course of law.  Id.  We therefore conclude that the parole law
instruction, judged as a whole, was not misleading and certainly not so
misleading as to convert Appellant=s
trial into a fundamentally unfair proceeding which denied him due process.[3]  Thus, we hold that the parole instruction as
applied in this case and mandated by Article 37.07, section 4(a), does not
violate the federal due process clause of the Fourteenth Amendment to the
United States Constitution.  Accordingly,
the trial court did not err in submitting the statutorily mandated charge.  We overrule his second argument  in the second issue on appeal.

The judgment of
the trial court is affirmed. 

 

 

December
5, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]
See Goldblatt v. Town of Hempstead, 369 U.S. 590, 595‑96, 82 S.Ct.
987, 8 L.Ed.2d 130 (1962)(the determination of the constitutionality of a
statute, attacked as a violation of due process, begins with the presumption
that the statute is constitutional); Ex parte Granviel, 561 S.W.2d 503,
511 (Tex.Crim.App. 1978)(when an attack upon the constitutionality of a statute
is made, courts begin with the presumption that the statute is valid and that
the legislature has not acted unreasonably or arbitrarily); Ex parte Smith,
441 S.W.2d 544, 547 (Tex.Crim.App. 1969)(stating that when the
constitutionality of a statute is attacked, all reasonable doubts should be
resolved in favor of the lawful exercise of the legislature=s power).  Courts seek to interpret statutes such that
their constitutionality is supported and upheld.  United States v. National Dairy Products,
Inc., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); Faulk v.
State, 608 S.W.2d 625, 630 (Tex.Crim.App. 1980).





[2]
Several Courts of Appeals have addressed this issue and concluded that the
Article 37.07, section 4 instruction on parole does not violate the due process
clause of the United States Constitution. 
See Allen v. State, 761 S.W.2d 384 (Tex.App.‑-Houston [14th
Dist.] 1988, pet. denied); Johnson v. State, 737 S.W.2d 923 (Tex.App.‑-Beaumont
1987, rev=d and
remanded on other grounds); Ngoc Van Le v. State, 733 S.W.2d 280
(Tex.App.--Houston [14th Dist.] 1987, rev=d
and remanded on other grounds); Ruiz v. State, 726 S.W.2d 587
(Tex.App.--Houston [14th Dist.] 1987, pet. granted); Torres v. State,
725 S.W.2d 380 (Tex.App.--Amarillo 1987, rev=d
and remanded on other grounds); Boudreaux v. State, 723 S.W.2d 230
(Tex.App.--Beaumont 1986); Clark v. State, 721 S.W.2d 424
(Tex.App.--Houston [1st Dist.] 1986, no pet.); Patton v. State, 717
S.W.2d 772, 780 (Tex.App.--Fort Worth 1986, no pet.).





[3]
Luquis, 72 S.W.3d at 368; see Estelle, 502 U.S. at 72, 112 S.Ct.
475; see also Jones v. United States, 527 U.S. 373, 390, 119 S.Ct. 2090,
144 L.Ed.2d 370 (1999)(Athe
proper standard for reviewing such claims [that Aallegedly
ambiguous instructions caused jury confusion@]
is whether there is a reasonable likelihood that the jury has applied the
challenged instruction in a way that violates the Constitution@)[internal quotation marks omitted].